2013-1531

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

CIGAR KING, LLC.,

Appellant,

v.

CORPORACION HABANOS, S.A.,

and EMPRESA CUBANA DEL TABACO,

d/b/a CUBATABACO,

Appellees.

_____

PETITION FOR REVIEW FROM THE
UNITED STATES PATENT AND TRADEMARK OFFICE
CANCELLATION NO. 92053245

_____

CORRECTED BRIEF OF APPELLANT CIGAR KING, LLC.

FRANK HERRERA
H NEW MEDIA LAW
55 S.E. 2nd Avenue, Suite 408
Delray Beach, Florida 33444
(561) 900-2486

Attorney for Appellant

# CERTIFICATE OF INTEREST

Counsel for the Appellants, Cigar King, LLC., certifies the following:

    1.    The full name of every party or amicus represented by me is:

        Cigar King, LLC.

    2.    The name of the real party in interest represented by me is:

        Cigar King, LLC.

    3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

        None.

    4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

        H New Media Law (Frank Herrera).

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST …..............................................................i

TABLE OF CONTENTS …......................................................... ii-iii

TABLE OF AUTHORITIES …....................................................... iv-vi

STATEMENT OF RELATED CASES …..........................................vii

STATEMENT OF JURISDICTION …...............................................1

STATEMENT OF THE ISSUES …...................................................2

STATEMENT OF THE CASE …...................................................3-4

STATEMENT OF THE FACTS …................................................. 5-6

SUMMARY OF ARGUMENT ….................................................... 7

STANDARD OF REVIEW …......................................................... 7

ARGUMENT …....................................................................... 7

    I.  THE STANDING THRESHOLD. …............................................. 7

        A.    Issuance of Specific License Is Not Enough. …..........................7

        B.    Administrative Agency Standing Requirement. …......................8

    II.  HABANOS DID NOT ALLEGE A  REAL INTEREST. …..................9

    III. HABANOS DOES NOT HAVE AN OBJECTIONABLY REASONABLE BASIS FOR DAMAGE. …........................................ 13

CONCLUSION …........................................................................ 20

ADDENDUM …...................................................................... 21

CERTIFICATE OF SERVICE …................................................... 22

CERTIFICATE OF COMPLIANCE …........................................... 23

# TABLE OF AUTHORITIES

page(s)

## Cases

*Aries Systems Corp. v. World Book Inc.*, 26 USPQ2d 1926 (TTAB 1993) …........ 18

*Aruba v. Excelsior Inc.*, 5 USPQ2d 1685 (TTAB 1987) …....................................... 18

*Blackhorse v. Pro Football, Inc.*, 98 USPQ2d 1633 (TTAB 2011) …....................... 3

*Books on Tape, Inc. v. The Booktape Corp.*, 836 F.2d 519 (Fed. Cir. 1987) …......... 16

*Bromberg v. Carmel Self Service, Inc.*, 198 USPQ 176 (TTAB 1978) …................. 18

*Cubaexport v. United States Department of Treasury*,
516 F.Supp.2d 43 (D.D.C. 2007) …........................................................................ 8

*Eastman Kodak Co. v. Bell & Howell Document Management
Products Co.*, 994 F.2d 1569 (Fed. Cir. 1993) …..................................................... 12

*Estate of Biro v. Bic Corp.*, 18 USPQ2d 1382  (TTAB 1991) …............................... 18

*Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310 (Fed.Cir.2005) …............... 7

*Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098 (CCPA 1976) … 16

*Ferreiro v. U.S.*, 350 F.3d 1318 (Fed. Cir., 2003) …................................................. 12

*Fiat Group Automobils, S.p.A. v. ISM, Inc.*, 94 USPQ2d 1111 (TTAB 2010) …...... 19

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
729 F.Supp.2d 246 (DDC 2010) …........................................................................ 12

*Harjo v. Pro Football Inc.*, 30 USPQ2d 1828 (TTAB 1994) …................................ 18

*International Order of Job's Daughters v. Lindeburg & Co.*,
727 F.2d 1087 (Fed. Cir. 1984) …......................................................................... 16

*Intersat Corp. v. Int'l Telecommunications Satellite Organization*,
226 USPQ 154 (TTAB 1985) …................................................................ 18

*Kelly Services Inc. v. Greene's Temporaries Inc.*,
25 USPQ2d 1460 (TTAB 1992) …............................................................ 18

*Nabisco Inc. v. Wm. Wrigley Jr. Co.,* 40 USPQ2d 1251 (TTAB 1996) …................ 17

*Order of Sons of Italy in America v. Profumi Fratelli Nostra AG*,
36 USPQ2d 1221 (TTAB 1995) …............................................................ 17

*Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317 (CCPA 1981) …............ 16

*Petroleos Mexicanos v. Intermix, S.A.*, 97 USPQ2d 1403 (TTAB 2010) …............. 19

*Regan v. Wald*, 468 U.S. 222 (1984) …....................................................11

*Ritchie v. Simpson*, 170 F.3d 1092 (Fed. Cir. 1999) …...................................8, passim

*Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316 (Fed. Cir. 1983) …..........16

*Stocker v. General Conference Corp. of Seventh-day Adventists*,
39 USPQ2d 1385 (TTAB 1996) …............................................................ 17

*Universal Oil Products, Co. v. Rexall Drug and Chemical Co.*,
463 F.2d 1122 (C.C.P.A. 1972) …............................................................ 14

*Vick Chemical Co. v. Thomas Kerfoot & Co.*, 80 F.2d 73 (CCPA 1935) …............. 16

**Statutes**

15 U.S.C. § 1052(a) …...................................................................................3
15 U.S.C. § 1052(e)(3) …..............................................................................3
15 U.S.C. § 1063 …......................................................................................9

**Regulations**

*The Cuban Assets Control Regulations* ("C.A.C.R."),
31 C.F.R. Part 515 et seq. …..........................................................................1, passim

# Other Authorities

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 20:11 (4th ed. WESTLAW update 2011) …...........................................................12

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Cigar King provide as follows:

(a) There have been no previous appeals in this case.

(b) Cigar King is aware of at least one case that may be directly affected by the Court's decision in this case.  Namely, Cigar King is aware of the Case No. 2013-1411 styled ABRAHAM FLORES v. CORPORACION HABANOS, S.A. and EMPRESA CUBANA DEL TABACO which is potentially before the Federal Circuit.[1]  Further, if Habanos are found to not have standing then several other cases for which Habanos have been involved may be directly affected by the Court's decision in this case.

---

1  The Commissioner for Trademarks is currently considering Flores brief in support of the timeliness of the Notice of Appeal in that matter.

vii.

## STATEMENT OF JURISDICTION

The Trademark Trial and Appeal Board had jurisdiction under 15 U.S.C §1064 and entered an amended final judgment on June 12, 2013. This appeal, noticed on June 12, 2013, is timely. 15 U.S.C. §1071(a)(2); Fed. R. App. P. 4. This Court has jurisdiction under 15 U.S.C. §1071.

Cigar King contests the Trademark Trial and Appeal Board's subject matter jurisdiction since Cigar King contends that Habanos did not have standing to bring the Cancellation in the first instance. The Cuban Assets Control Regulations ("C.A.C.R."), 31 C.F.R. Part 515 et seq., authorizing Habanos' standing is unconstitutional. If the Regulation is constitutional, the Regulation does not automatically confer standing on Habanos. Rather, the issuance of the specific license authorizing the ability to initiate the cancellation proceeding is merely is prerequisite hurdle for Habanos to file an opposition of cancellation proceeding. Habanos must still demonstrate standing as part of its case.

## STATEMENT OF ISSUES

1. Whether the TTAB erred when it cancelled Cigar King's trademark registrations without a full trial on the merits of the case.

2. Whether Habanos has demonstrated that it has a "real interest" in the cancellation proceeding, and whether Habanos' has an objectionably reasonable basis in its belief that it will be damaged by Cigar King's registrations.

## STATEMENT OF THE CASE

Habanos filed the underlying Cancellation Proceeding, No. 92053245, seeking to cancel Cigar King's trademark registrations for the marks HAVANA SOUL and HABANA LEON, both for "cigars made with Cuban seed tobacco" in International Class 34.

As grounds for cancellation, Habanos alleged, *inter alia*, that the involved marks are geographically deceptive under Trademark Act Section 2(a), 15 U.S.C. § 1052(a), and primarily geographically deceptively misdescriptive under Trademark Act § 2(e)(3), 15 U.S.C. § 1052(e)(3).

On June 12, 2013, the Trademark Trial and Appeal Board (hereinafter "TTAB") issued an order granting the Cancellation Proceeding as a sanction for Cigar King's alleged discovery misconduct. While Cigar King believes that basis for dismissal was in error, it chooses to focus this appeal brief on the ultimate issue of standing, or Habanos' lack thereof.

In the TTAB's order, the TTAB acknowledges that Cigar King raised the affirmative defense of standing, but stated that standing is not an affirmative defense but is an element of petitioner's claim. Appendix A1, p. 5, fn. 3. *citing Blackhorse v. Pro Football, Inc.*, 98 U.S.P.Q.2d 1633, 1637 (TTAB 2011). Whether standing is an affirmative defense or an element of Habanos' claim, Cigar King should have the opportunity to address this fundamental issue. Standing is threshold element of

Habanos' claim, but Cigar King was unable to address this issue in a trial brief since the case was dismissed.  Appeal was immediately and timely taken.

## STATEMENT OF THE FACTS

Cigar King is engaged in the lawful sale of premium cigars throughout the United States. Appellees Corporacion Habanos, S.A. is a corporation organized under the laws of Cuba. Petition for Cancellation, para. 1. Appellee Empresa Cubana del Tabaco, d/b/a Cubatabaco "is a state corporation with independent juridicial personality and independent property established by Cuban law." Petition for Cancellation, para. 2. The Appellees will be collectively referred to as "Habanos." Appellee Corporacion Habanos distributes and sells Cuban cigars throughout the world with the exclusion of the United States due to the Cuban Embargo. Petition for Cancellation, para. 6. Appellee Cubatabaco offers retail stores of Cuban cigars throughout the world with the exclusion of the United States. Petition for Cancellation, para. 7.

Cigar King's Registration No. 3,207,740 for the HAVANA SOUL mark issued February 13, 2007, and alleges June 30, 2005 as the date of first use anywhere and date of first use in commerce. The registration includes a disclaimer of HAVANA.

Cigar King's Registration No. 3,207,741 for the HABANA LEON mark issued February 13, 2007, and alleging June 30, 2005 as the date of first use anywhere and date of first use in commerce. The registration includes a disclaimer of HABANA.

Days before the trademarks were eligible to be "incontestable," Habanos commenced the filing of the cancellation proceeding which is the subject of this appeal.

Habanos has not been able to sell its products in the United States for the past 50 years, nor is there any foreseeable future for it do so.

## SUMMARY OF THE ARGUMENT

The owner of a product (or service) that is illegal in the United States does not have sufficient standing to challenge a United States trademark registration when its only allegation of belief of damage is that one day in the undetermined future it may be able to sell its product (or offer its service) in the United States.

## STANDARD OF REVIEW

Appeals of TTAB Cancellation Proceedings before the Federal Circuit are based upon a substantial evidence standard of review. The issue of a litigant's lack of standing can be raised at any time.

## ARGUMENT

### I.   THE STANDING THRESHOLD.

The TTAB's sanction of dismissal of the case short-circuited Cigar King's ability to adequately challenge Habanos' standing. Standing is a legal question and jurisdictional issue that this court reviews without deference. *See Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1313 (Fed.Cir.2005).

#### A.   Issuance of a Specific License from Treasury Department Not Enough.

The Cuban Assets Control Regulations ("C.A.C.R."), 31 C.F.R. Part 515 et seq., which implements the United States trade embargo against Cuba, generally prohibit transactions in the United States involving property, including trademarks, in which Cuba or a Cuban National has an interest, unless licensed or exempt. 31 C.F.R. §§

7

515.201, 515.311. A general license authorizes transactions related to the registration and renewal of trademarks in which Cuba or a Cuban national has an interest. 31 C.F.R. § 515.527. Transactions by or on behalf of Cuba or Cuban nationals that are not authorized by the general license, such as a cancellation petition (as we have here) on the grounds that a trademark is geographically deceptively misdescriptive, must be authorized by a specific license issued by the United States Department of the Treasury's Office of Foreign Assets Control (OFAC). 31 C.F.R. § 515.201. However, the mere issuance of a specific license does not confer standing. A party to a cancellation proceeding must still allege, and prove, standing.

While Habanos obtained an OFAC specific license to bring this cancellation proceeding, this is merely a jurisdictional requirement, rather than an element of either standing or grounds for cancellation. *See*, *e.g. Cubaexport v. United States Department of Treasury*, 516 F.Supp.2d 43, 48 (D.D.C. 2007)(OFAC license required to authorize transactions relating to Cuban trademarks). Habanos must still show standing as set forth below.

### B. Administrative Agency Standing Requirement.

Generally, in Article III courts there must be a "case or controversy" between the two parties in order for the plaintiff to have standing. *Ritchie v. Simpson*, 170 F.3d 1092, 1094 (Fed. Cir. 1999). However, the standing requirements differ before an administrative agency like the TTAB. *Id*. Statute, rather than the "case or controversy"

8

requirements, confers standing requirements before an agency. *Id*. at 1095. The Lanham

Act provides:

> Any person who believes that he would be damaged by the registration of a
> mark upon the principal register, including the registration of any mark
> which would be likely to cause dilution by blurring or dilution by
> tarnishment under section 1125(c) of this title, may, upon payment of the
> prescribed fee, file an opposition in the Patent and Trademark Office,
> stating the grounds therefore . . . .

15 U.S.C. § 1063.

Though the Lanham Act's requirement's are broad, the opposer (in this case,

Habanos) must meet two additional judicially-created requirements: he must have a

"real interest" in the proceedings and a "reasonable basis" for his belief of damage.

*Ritchie*, 170 F.3d at 1095.

## II.    **HABANOS DID NOT ALLEGE A "REAL INTEREST."**

A "real interest" according to case law could mean a wide variety of things,

including fear of economic and non-economic harm.  Habanos does not and can not

have a real interest in the cancellation of Cigar King's trademark registrations because it

is legally foreclosed from selling its products in the United States. Thus, the existence of

Cigar King's registrations and the products branded with same are not legally competing

and therefore have no bearing on Habanos' bottom line.  Further, unlike persons,

Habanos can not demonstrate a non-economic harm like some of the litigants in the

cases set forth *infra* (woman, American Indians, A family man).   Rather, any harm

(economic or non-economic) that Habanos might allege is illusory and not grounded in

the realities of today's marketplace. Habanos' own allegations support Cigar King's

position. Namely, Habanos alleges that its " … success in marketing 100% Cuban-

origin cigars to U.S. Consumers *as soon as U.S. Law permits*...will be and has been

damaged by the registration of [Cigar King's] marks..." Petition for Cancellation, para.

51 (emphasis added). "As soon as U.S. Law permits is not definite. In fact, the Cuban

embargo has been in place for 50 years, and may continue for another 50 years.[1]

Habanos does not, and can not, satisfy both requirements to show standing. First,

Habanos can not have a "real interest" in these proceedings. A "real interest" is a

---

[1]     While discussing a factually distinct case, but instructive on the issue of issue of
what trademark rights might exist if and when the Cuban embargo is lifted, the court in
*General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F.Supp.2d 1335 (S.D. Fla., 2002)
stated the following:

> The issue here, however, is not Plaintiff's current ownership rights in
> "Punch" and "Partagas" but Plaintiff's future ownership rights when or if the
> Cuban embargo is lifted. Defendant's agents have speculated about the effect
> that a lifting of the Cuban embargo restrictions would have on the trademark
> rights of Plaintiff. Such speculative legal analysis does not give rise to
> Lanham Act liability unless it can be shown to be false. "Absent a clear and
> unambiguous ruling from a court or agency of competent jurisdiction,
> statements by laypersons that purport to interpret the meaning of a statute or
> regulation are opinion statements, and not statements of fact." ...

> Similarly, as the Cuban embargo has not yet been lifted, Plaintiff will not be
> able to prove that the statements allegedly made by Defendants' agents are
> indeed false. That is, there has been no clear and unambiguous ruling by a
> court or agency determining the effect that lifting the Cuban embargo would
> have on non-Cuban cigar trademark owners. Accordingly, the statements by
> Defendant's agents that lifting the Cuban embargo will negatively affect
> Plaintiff's rights in "Punch" and "Partagas" are opinions based on a possible
> future event, not statements of fact as required by 15 U.S.C. § 1125(a).
> (internal citations omitted).

"direct and personal stake in the outcome of the opposition." *Id*. The Ritchie court held that an opposer had a real interest in the registration of O.J. Simpson's marks O.J. SIMPSON, O.J., and THE JUICE based on the opposer's status as "a family man" who believed the marks were threatening to family values. *Id*. at 1097. In *Ritchie*, the opposer had no financial (economic) interest in the registration, yet the Court found he had a "real interest." *Id*. That decision was based upon an alleged non-economic damage to a real person living in the United States.

In stark contrast, Habanos is a corporacion, and not a person, and as a Corporacion it is in the business to make money. Therefore, its interest is economic, and not as in the *Ritchie* case, non-economic. It is currently impossible for Habanos to engage in any economic endeavors in the United States due to the Cuban Embargo which has been in place for more then 50 years. Habanos simply does not and can not sell any cigars in the United States. Therefore, since Habanos can not suffer real economic harm in the United States, Habanos can not have a real interest in the continued existence of Cigar King's trademark registrations.

The Cuban Asset Control Regulations were promulgated by Treasury as 31 C.F.R. pt. 515 (1963), pursuant to the United States policy of economic embargo against the Cuban government. *See Regan v. Wald*, 468 U.S. 222, 225-26 (1984)(discussing genesis of the regulations). They were devised in order to frustrate the Cuban government's attempts to destabilize governments throughout Latin America by, *inter alia*, prohibiting

transactions involving property in which Cuba or Cubans have an interest. *Id*. at 226-27. The prohibited transactions include those between Cuban nationals and the United States government. See 31 C.F.R. § 515.205(j) (persons subject to the prohibitions of the regulations include the United States). *Ferreiro v. U.S.*, 350 F.3d 1318 (Fed. Cir., 2003) . While 31 C.F.R. §515.201 authorizes Cuban entities or persons, under special permit, to file opposition and cancellation proceedings in the T.T.A.B., they must still establish standing to do so.

Where a party bringing an opposition or cancellation proceeding is an entity then case law has consistently found that some economic interest must be alleged in order to confer standing. *Eastman Kodak Co. v. Bell & Howell Document Management Products Co.*, 994 F.2d 1569 (Fed. Cir. 1993)(party challenging mark on descriptiveness grounds may establish standing by pleading and proving it is engaged in manufacture or sale of related products); see also 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §20:11 (4th ed. WESTLAW update 2011) (competitor presumptively has standing).

The undersigned is not arguing that Habanos does not have standing merely because it is a Cuban entity. Rather, Habanos does not have standing because it can not suffer economically because it can not sell its products in the United States.[2] The

---

[2] The court in *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 729 F.Supp.2d 246 (DDC 2010) found that Habanos did have standing. However, that court made no specific distinction about whether the legality or illegality of a product had any bearing on the issue of standing.

situation would be different if a Cuban entity or person sought to cancel a trademark because the continued existence of the trademark would cause economic harm because that person or entity is legally entitled to disseminate or sell products that are exempted from the Cuban embargo. Likewise, that Cuban entity or person could suffer non-economic harm in same manner as alleged by Ritchie or the like.

For instance, Cuban persons or entities engaged in the arts, such as musicians, authors, directors, actors, photographers and the like could properly alleged standing because of a perceived economic and non-economic harm. Goods exempted from the Cuban Embargo could pass freely and legally between the Florida Straits. Namely, there are no limits on the import or export of informational material under the Cuban Embargo. *See* 31 C.F.R. §§ 515.206(a) and 515.332 of the Regulations. Such exempted materials include books, films, posters, photographs, CDs, all of which are statutorily exempt from the prohibitions of the Regulations and may be purchased, sold, and transported freely. Id. However, Cuban cigars are specifically prohibited under the regulations. 31 C.F.R. § 515.[3]

## III.   HABANOS DOES HAVE AN OBJECTIVELY REASONABLE BELIEF OF DAMAGE.

Second, Habanos does not have an objectively reasonable basis for its belief of damage. Its allegations in the Petition for Cancellation are merely its subjective belief

---

[3]      Criminal penalties for violation of the Regulations range up to $1,000,000 in fines for corporations, $250,000 for individuals and up to 10 years in prison. Civil penalties of up to $65,000 per violation may be imposed by OFAC. 31 C.F.R. §515.

of damage and are not grounded in reality.  The opposer [in this case the petitioner for cancellation, Habanos] must have a "reasonable basis in fact;" a subjective belief is insufficient. *Ritchie* at 1098 (*quoting Universal Oil Products, Co. v. Rexall Drug and Chemical Co.*, 463 F.2d 1122 (C.C.P.A. 1972)).  Unlike Mr. Ritchie, who submitted petitions signed by people from all over the United States to establish his reasonable basis for his belief of damage, Habanos can not submit a single petition, affidavit, declaration or other evidentiary support from a single United States citizen to establish its "reasonable basis for belief of its damage." *Id*.  The subjective beliefs of others qualified as "objective proof that [Mr. Ritchie] is not alone in believing that he would be damaged if the marks were registered." *Id.* Habanos, unlike Mr. Ritchie, is alone and therefore its fear of economic harm/damage is unreasonable.  The fact that Habanos may have global sales of other cigar products, with trademarks that are dissimilar to the trademarks subject to this litigation, does nothing to support its subjective belief of damage entitling it to standing. The continued existence of Cigar King's trademark registrations will have no bearing on the value of any brands owned by Habanos.  This is particularly the case since Habanos can not demonstrate any legal entitlement to the term habanos as that term has been registered (with disclaimer) many times in the United States in connection with other terms for cigars.  In fact, prior to Habanos' campaign to oppose or seek cancellation of marks containing Havana or Habano, each of the marks were approved by the Trademark Office for publication and/or registration

14

with a disclaimer of those terms as the Trademark Office clearly understood that such disclaimed use in connection with other terms could not harm Habanos.

The *Ritchie* court acknowledges that there must be something more then "belief of damage." *Id*. Rather, that the "belief of damage" required by Section 13 of the Lanham Act is more than a subjective belief. *Id*. *citing Universal Oil*, 463 F.2d at 1124. The belief must have a "reasonable basis in fact." *Id*.

For mere illustrative purposes, the dissent in *Ritchie* is instructive on the history of standing cases. For instance, there is a long history of case law that suggests that mere inter-meddlers should not be given standing. *Id*. Habanos is an inter-meddler just as a person or a company engaged in the illegal sale of marijuana would be if it attempted to oppose or seek the cancellation of a trademark because it believes that its illegal marijuana business would be damaged by the trademark it is seeking to oppose or cancel. Like Habanos, the marijuana litigant could simple allege that marijuana is legal outside of the United States, and that it will be damaged if and when marijuana is made legal throughout the United States. Surely, the long history of standing doctrine would not support such a claim. Therefore, why should if offer Habanos the ability to bring a case based upon the same illusory "belief in future damage?"

The requirement that an opposer have an interest in the registration beyond that of the general public is not novel to this brief. The requirement that a party have a "real interest" has been a part of Federal Circuit jurisprudence for a long time. As the dissent

noted in *Ritchie*, it has been steadfastly applied by the Federal Circuit, the Court of Customs and Patent Appeals, and the Trademark Trial and Appeal Board. See, *e.g.*, *Books on Tape, Inc. v. The Booktape Corp.*, 836 F.2d 519, 520 (Fed. Cir. 1987) ("Petitioner, a competitor of respondent, clearly has an interest in the outcome beyond that of the general public and has standing"); *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1092 (Fed. Cir. 1984) ("Lindeburg has clearly demonstrated a `real interest' in this cancellation proceeding. The allegations which Lindeburg made in its petition for cancellation regarding its longtime production and sale of merchandise with the Job's Daughters emblem are fully supported"); *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1326 (Fed. Cir. 1983) (cancellation petitioner demonstrated "real interest" by alleging its mark was confusingly similar to registered trademark); *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 1319-20 (CCPA 1981) (personal interest may arise from manufacture or sale of similar goods); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1100-01 (CCPA 1976) ("A party has standing to oppose within the meaning of '13 if that party can demonstrate a real interest in the proceeding. . . . Opposer's real commercial interest in protecting its registered marks is manifest"); *Vick Chemical Co. v. Thomas Kerfoot & Co.*, 80 F.2d 73, 77 (CCPA 1935) (cancellation petitioner must have "greater interest than a member of the general public").

It is clear from these cases that Congress did not mean to grant these rights to a

mere intermeddler, to one who had no immediate, present, and legal interest in the use of the term. A person or entity seeking to cancel a registration or oppose an application for registration must have a greater interest than a member of the general public who by such registration suffers no present harm or harm in the foreseeable future. *United Shoe*, 56 F.2d at 295.

The T.T.A.B. has frequently applied this rule, determining, upon highly diverse facts, whether there exists a real interest. A sampling of T.T.A.B. cases illustrates the wide acceptance and continuing application of this rule. *See, e.g., Universal City Studios Inc. v. Cleveland Museum of Natural History*, 39 USPQ2d 1382, 1384 (TTAB 1996) (opposer, although not manufacturing or selling the identical goods, has "personal interest in the outcome of the case beyond that of the general public"); *Stocker v. General Conference Corp. of Seventh-day Adventists*, 39 USPQ2d 1385, 1387 n.4 (TTAB 1996)(members of denomination have "real interest in the proceeding" to cancel registration of their denomination's name; "the record establishes each petitioner's interest in the case beyond that of the general public"); *Nabisco Inc. v. Wm. Wrigley Jr. Co.*; 40 USPQ2d 1251, 1255 (TTAB 1996) ("In order to establish standing, a party must plead and prove a `real interest' in the case, that is, a personal interest in the outcome of the proceeding beyond that of the general public or a mere intermeddler"); *Order of Sons of Italy in America v. Profumi Fratelli Nostra AG*, 36 USPQ2d 1221, 1223 (TTAB 1995)(damage to personal reputation meets the "Federal Circuit [standard] that an

opposer need only show `a personal interest in the outcome of the case beyond that of the general public'"); *Harjo v. Pro Football Inc.*, 30 USPQ2d 1828, 1830 (TTAB 1994) (in cancellation proceeding, Native Americans have a personal interest beyond that of the general public in contesting trademark asserted to be disparaging to them as Native Americans); *Aries Systems Corp. v. World Book Inc.*, 26 USPQ2d 1926, 1930 n.12 (TTAB 1993) ("applicant has an interest in this controversy beyond that of the general public"); *Kelly Services Inc. v. Greene's Temporaries Inc.*, 25 USPQ2d 1460, 1462 (TTAB 1992) ("real interest in the proceeding, that is, an interest beyond that of the general public"); *Estate of Biro v. Bic Corp.*, 18 USPQ2d 1382, 1384 (TTAB 1991) (estate of inventor, opposing registration of his name as a trademark for his invention, "has a personal interest in the outcome of this case beyond that of the general public"); *Aruba v. Excelsior Inc.*, 5 USPQ2d 1685, 1686 (TTAB 1987) (Commonwealth of Aruba has a "real interest in the outcome of [the] case beyond that of the general public" to oppose the mark "Aruba" for swimwear); *Intersat Corp. v. Int'l Telecommunications Satellite Organization*, 226 USPQ 154, 155 (TTAB 1985) ("The purpose of the requirement of standing is to avoid litigation where there is no real controversy between the parties. That is to say, the standing requirement weeds out `intermeddlers' from those with a `personal interest in the outcome beyond that of the general public'"); *Bromberg v. Carmel Self Service, Inc.*, 198 USPQ 176, 179 (TTAB 1978) (women have standing to oppose registration of a trademark derogatory to them as women).

18

In the following cases, while not engaged in active trade in the United States the foreign entities were not legally prohibited from selling their products in this United States and therefore were found to have standing. There is no economic embargo with Mexico. *Petroleos Mexicanos v. Intermix, S.A.*, 97 USPQ2d 1403 (TTAB 2010) (foreign petitioner need not allege proprietary rights in its name for purposes of standing to bring Section 2(a) claim); However, it did alleged that it had substantial business activities in the United States. This is something that Habanos can not allege since the 50 year old Cuban embargo forbids it. The *Intermix* case is instructive on activities by foreign entities in the United States which are completely at odds with Habanos' lack of any commercial activity in the United States. Habanos has only alleged an illusory concern about potential future harm if and when the 50 year old Embargo is lifted. This is not concrete, and this Court should not find such allegation sufficient to confer standing.

Likewise, the parties in *Fiat Group Automobils, S.p.A. v. ISM, Inc.*, 94 USPQ2d 1111 (TTAB 2010) were not legally foreclosed from selling products in the United States. The T.T.A.B. a stated that foreign owner without use of its mark in the United States may bring a claim for dilution based on the fame of its mark here, provided that it has filed an application to register the mark in this country.

There is not a single case on record that addresses the important distinction outlined here. Namely, that an entity foreclosed from legally selling its products in the

United States should not have standing to bring an action against a person or entity that has legally sold its product in United States commerce, and has lawfully sought and obtained (without objection from the Trademark office) a federal trademark registration. Cigar King does not argue that it is impossible for any Cuban person or entity to properly establish standing. Certainly, there are factual scenarios in which standing could be demonstrated when economic harm/damage is likely because the product at issues is exempted from the Cuban Embargo, or non-economic harm/damage can be demonstrated. Such is not the case here.

Accordingly, Habanos does not have standing because it does not have a real interest in this case, nor does it have a reasonable basis for its belief of economic harm/damage.

**CONCLUSION**

The Federal Circuit should find that Habanos never had standing to bring this action. Alternatively, if standing is found, then this Court should find that the T.T.A.B.'s judgment should be reversed and this matter should be remanded with instructions.

Dated:        October 17, 2013

s/Frank Herrera
H New Media Law
55 S.E. 2nd Avenue
Delray Beach, Florida 33444
(561) 900-2486
fherrera@hnewmedia.com

*Attorney for Appellant*

20

# <u>APPENDIX</u>

## JUDGMENTS AND ORDERS APPEALED FROM

T.T.A.B. Order of June 12, 2013                                                A1

## TRADEMARK REGISTRATIONS IN SUIT

Federal Trademark Registration No. 3,207,740 for HAVANA SOUL        A10

Federal Trademark Registration No. 3,207,741 for HABANA LEON        A11

## CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that on October 17, 2013 that I electronically filed this Corrected Brief with the Federal Circuit using the cm/ecf system which will automatically send notification to counsel for Appellee. On October 18, 2013 I sent 12 copies of the brief to the Federal Circuit. I also sent two copies of the brief to counsel Appellee on the same day using the same method of delivery, to:

David B. Goldstein, Esq.
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.
45 Broadway, Suite 1700
New York, New York 10006-3791

s/FRANK HERRERA
Frank Herrera

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 3,992 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Times New Roman 14 point font.

Dated:      October 17, 2013

_s/FRANK HERRERA
Frank Herrera
*Attorney for Appellant*

CASE PARTICIPANTS ONLY

ADDENDUM

A1

Case: 13-1531    Case: 13-1531    Document: 16    Page: 33    Filed: 10/17/2013

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Baxley                          Mailed:  June 12, 2013

                               Cancellation No. 92053245

                               Corporacion Habanos, S.A. and
                               Empresa Cubana del Tabaco,
                               dba Cubatabaco

                                    v.

                               Cigar King, Ltd.

Before Kuhlke, Wolfson, and Masiello,
Administrative Trademark Judges.

By the Board:

    In the above-captioned proceeding, petitioners seek

cancellation of respondent's registrations for the marks

HAVANA SOUL and HABANA LEON, both for "[c]igars made with

Cuban seed tobacco" in International Class 34.[1]  As grounds

for cancellation, petitioners allege:  (1) that the

involved marks are geographically deceptive under Trademark

Act Section 2(a), 15 U.S.C. Section 1052(a), and primarily

geographically deceptively misdescriptive under Trademark

---

[1] Registration No. 3207740 for the HAVANA SOUL mark issued
February 13, 2007, and alleges June 30, 2005 as the date of first
use anywhere and date of first use in commerce.  The registration
includes a disclaimer of HAVANA.
 Registration No. 3207741 for the HABANA LEON mark issued
February 13, 2007, and alleging June 30, 2005 as the date of
first use anywhere and date of first use in commerce.  The
registration includes a disclaimer of HABANA.

Act Section 2(e)(3), 15 U.S.C. Section 1052(e)(3), "for lack

of the requisite nexus with Havana, Cuba or Cuba;" (2) that

the involved marks are deceptive under Trademark Act

Section 2(a), 15 U.S.C. Section 1052(a), and merely

descriptive under Trademark Act Section 2(e)(1), 15 U.S.C.

Section 1052(e)(1); (3) that, because the terms "'Havana'

and 'Habana,' when used on or in connection with cigars,

are indications of geographical origin or source, which do

not correspond to the place in which respondent's

"identified goods are, will be, or lawfully could be,

fabricated, manufactured, or produced," the registrations

should be cancelled under Articles 23-28 of the General

Inter-American Convention for Trade Mark and Commercial

Protection, 46 Stat. 2907 ("IAC") and Trademark Act

Sections 44(b) and (h), 15 U.S.C. Sections 1126(b) and

(h);" and (4) fraud based on respondent's amendments to the

identifications of goods in the applications for the

involved registrations. Respondent, in its answer, denied

the salient allegations of the petition to cancel and set

forth affirmative defenses and a counterclaim seeking

cancellation of petitioners' pleaded Registration No.

1970911. The Board dismissed the counterclaim in an August

11, 2011 order.

In a July 2, 2012 order, the Board granted in part and denied in part petitioners' motion to compel discovery.  In that order, respondent was allowed until August 1, 2012 to: (1) conduct a thorough search of its records for responsive documents that are responsive to all of petitioners' document requests except request no. 28; (2) serve amended responses to petitioners' document requests (other than request no. 28), which accurately reflect respondent's document production, as necessary; (3) serve supplemental responsive documents as necessary upon petitioners with responsive documents labeled or organized to correspond with the request to which each document is responsive; (4) serve new copies of any website printouts that it produced in response to petitioners' document requests that include both the date on which they were accessed and the URLs of the websites from which they were printed; (5) produce either (a) an index in which it identifies the request to which each document already produced in discovery is responsive or (b) new copies of documents already produced in discovery which indicate the request to which each document is responsive; and (6) serve amended responses under oath and without objection to petitioners' interrogatories, including complete responses to interrogatory nos. 9-13.

On August 15, 2012, petitioners filed a motion for
sanctions, including entry of judgment, based on
respondent's failure to comply with the Board's July 2,
2012 order.  The motion has been fully briefed.

After respondent's copy of the Board's August 16, 2012
order was returned as undeliverable by the U.S. Postal
Service, the Board, on October 12, 2012, issued an order
where it noted respondent's attorney's new correspondence
address and reset time for briefing the motion for
sanctions.[2]

In support of the motion for sanctions, petitioners
contend that judgment should be entered against respondent
because it wholly failed to comply with the July 2, 2012
order.  In the alternative, petitioners ask that the Board
strike respondent's affirmative defenses, preclude
respondent from introducing evidence, and require full
compliance with the July 2, 2012 order.

The substance of respondent's brief in response
consists in its entirety of the following.

---

[2] In that order, the Board noted that respondent included the new
correspondence address in the signature blocks of its motion
(filed January 25, 2012) to extend time to respond to
petitioner's motion to compel and its brief in response (filed
February 6, 2012) to petitioner's motion to compel, and that
respondent did not properly amend its correspondence address in
this proceeding by filing a separate change of correspondence
address in this case.  The Board further stated that, because the
July 2, 2012 order was not returned to the Board as
undeliverable, respondent was presumed to have received that
order.

1. Registrant conducted a thorough search of its records for responsive documents.

2. Registrant has no other responsive documents.

Registrant voluntarily takes the sanction of having all of its affirmative defenses stricken with the exception of the affirmative defense that Petitioners lack standing.[3]

Registrant also voluntarily accepts that it will not be able to rely upon certain documents requested but not produced as evidence in this matter relating to the first two elements of Petitioners' 2(e)(3) claim.

Registrant merely requests that it be given the opportunity to post a defense that Petitioners'[sic] lack standing and to defend against the third and final element of the Petitioners' [Section] 2(e)(3) claim.[4]

In reply, petitioners contend that respondent still

has not complied with four of the six enumerated

requirements set forth in the July 2, 2012 order and has

offered no explanation for its continuing refusal to

---

[3] "Lack of standing is not an affirmative defense.  Standing is an element of petitioners' claim." *Blackhorse v. Pro Football Inc.,* 98 USPQ2d 1633, 1637 (TTAB 2011).

[4] The elements of a primarily geographically deceptively misdescriptive refusal under Section 2(e)(3) are as follows:
    (a) the primary significance of the mark is a generally known geographic location;
    (b) the consuming public is likely to believe the place identified by the mark indicates the origin of the goods bearing the mark (i.e., that a goods-place association exists), when in fact the goods do not come from that place; and
    (c) the misrepresentation would be a material factor in the consumer's decision to purchase the goods.
*Corporacion Habanos S.A. v. Guantanamera Cigars Co.,* 102 USPQ2d 1085 (TTAB 2012) (citing *In re California Innovations,* 329 F.3d 1334, 66 USPQ2d 1853, 1856-57 (Fed. Cir. 2003)).

comply; that respondent admits that it should be
sanctioned, but makes no arguments as to why its proposed
lesser sanctions are appropriate and why entry of judgment
is not; and that respondent's assertion that it has
conducted a thorough search of its records and has found no
other responsive documents is "dubious."

Trademark Rule 2.120(g)(1) states, in relevant part,
as follows:  "If a party fails to comply with an order of
the Trademark Trial and Appeal Board relating to discovery,
… the Board may make any appropriate order, including any
of the orders provided in Rule 37(b)(2) of the Federal
Rules of Civil Procedure…."

Respondent did not allege that it did not receive the
July 2, 2012 order.  Under the circumstances herein, it was
incumbent upon respondent to comply fully and promptly with
that order or to timely file a request for reconsideration
thereof.  Instead of complying with the July 2, 2012 order
in a timely manner, respondent made only a three-months
late, *de minimis* effort to comply with the July 2, 2012
order.  In particular, respondent did not:  (1) serve
amended responses to petitioners' document requests to the
extent required, which accurately reflect respondent's

document production, as necessary;[5] (2) serve new copies of
any website printouts that it produced in response to
petitioners' document requests that include both the date
on which they were accessed and the URLs of the websites
from which they were printed; (3) prepare and serve either
(a) an index in which it identifies the request to which
each document already produced in discovery is responsive
or (b) new copies of documents already produced in
discovery which indicate the request to which each document
is responsive; and (4) serve amended responses under oath
and without objection to petitioners' interrogatories,
including complete responses to interrogatory nos. 9-13.

We construe respondent's response to the motion for
sanctions as affirmatively stating it will not provide the
discovery that the Board required in the July 2, 2012
order.  While accepting the lesser sanctions, respondent
has deliberately prevented petitioner from obtaining
information to present its case.  Respondent has evaded and
frustrated petitioners' attempts to secure discovery.  The
parties agree that entry of sanctions against respondent is

---

[5] The record in this case indicates that respondent's document
production consists of eighteen pages of documents from its own
records and 127 pages of printouts of website excerpts that were
the results of an Internet search made by an unspecified person
at an unspecified time.  The website excerpts are not identified
by either the URLs for the websites at issue or the date(s) on
which the websites were accessed.

warranted in this case.  However, respondent's deliberate
failure to comply in full with the Board's order has
secured for respondent the sanction of judgment.

Although entry of judgment as a sanction for failure
to comply with an order compelling discovery is a harsh
remedy, it is justified where no less drastic remedy would
be effective, and there is a strong showing of willful
evasion.  See *Unicut Corp. v. Unicut, Inc.*, 222 USPQ 341,
344 (TTAB 1984).  We believe that situation exists here.
In this case, respondent was under a Board order to take
certain specific actions to supplement its discovery by
August 1, 2012.  Further, respondent was warned of the
possible result of noncompliance with the order.
Respondent has been represented by counsel since the filing
of its answer in this proceeding.  We note that
respondent's brief in response to the motion for sanctions
did not set forth reasons for respondent's inability to
comply with the Board order by August 1, 2012.
Respondent's willful noncompliance with the July 2, 2012
order and deliberate action to impair petitioner's ability
to present its case after having been advised of the
possible consequences warrants entry of the sanction
requested by petitioners.

In view thereof, the motion for entry of sanctions under Trademark Rule 2.120(g)(1) is granted.  The petition to cancel is granted, judgment is hereby entered against respondent, and Registration Nos. 3207740 and 3207741 will be cancelled in due course.

A10

**Int. Cl.: 34**

**Prior U.S. Cls.: 2, 8, 9 and 17**

## United States Patent and Trademark Office

**Reg. No. 3,207,740**

Registered Feb. 13, 2007

## TRADEMARK
### PRINCIPAL REGISTER

# HAVANA SOUL

CIGAR KING, LTD. (ARIZONA CORPORATION)

7830 E. GELDING DR.

SCOTTSDALE, AZ 85260

    FOR: CIGARS MADE WITH CUBAN SEED TO-BACCO, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

    FIRST USE 6-30-2005; IN COMMERCE 6-30-2005.

    THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

    NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "HAVANA", APART FROM THE MARK AS SHOWN.

    SER. NO. 78-705,672, FILED 9-1-2005.

DAVID C. REIHNER, EXAMINING ATTORNEY

A11

Int. Cl.: **34**

Prior U.S. Cls.: **2, 8, 9 and 17**

Reg. No. 3,207,741

**United States Patent and Trademark Office**   Registered Feb. 13, 2007

**TRADEMARK**
**PRINCIPAL REGISTER**

# HABANA LEON

CIGAR KING, LTD. (ARIZONA CORPORATION)
7830 E. GELDING DR.
SCOTTSDALE, AZ 85260

FOR: CIGARS MADE WITH CUBAN SEED TO-
BACCO, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 6-30-2005; IN COMMERCE 6-30-2005.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "HABANA", APART FROM THE
MARK AS SHOWN.

THE FOREIGN WORDING IN THE MARK
TRANSLATES INTO ENGLISH AS LION.

SER. NO. 78-705,677, FILED 9-1-2005.

DAVID C. REIHNER, EXAMINING ATTORNEY