Appeal No. 2013-1531

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

CIGAR KING, LLC,

*Appellant,*

– v. –

CORPORACION HABANOS, S.A. and
EMPRESA CUBANA DEL TABACO (doing business as Cubatabaco),

*Appellees.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
TRADEMARK TRIAL AND APPEAL BOARD IN CANCELLATION NO. 92053245

## BRIEF FOR APPELLEES

DAVID B. GOLDSTEIN, ESQ.
RABINOWITZ, BOUDIN, STANDARD,
  KRINSKY & LIEBERMAN, P.C.
45 Broadway, Suite 1700
New York, New York 10006
(212) 254-1111

*Attorneys for Appellees*

January 29, 2014

Form 9

FORM 9.   Certificate of Interest

<div style="border: 1px solid black; padding: 20px;">

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Cigar King, LLC _____ v. Corporacion Habanos, S.A. _____

No. 2013-1531

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellees Corporacion Habanos, S.A. and Empresa Cubana del Tabaco certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Corporacion Habanos, S.A. and Empresa Cubana del Tabaco, d.b.a. Cubatabaco

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Corporacion Habanos, S.A. is more than 10% owned by Altadis,S.A., a Spanish corporation that was publicly held until early 2008; Altadis, S.A. is now 100% owned by Imperial Tobacco Group PLC, a publicly held United Kingdom corporation.

Cubatabaco:  None

_____

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

David B. Goldstein
Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.

_____

August 12, 2013 _____          /David B. Goldstein/ _____
          Date                                        Signature of counsel

                                          David B. Goldstein _____
                                              Printed name of counsel

Please Note: All questions must be answered
cc: Frank Herrera, Attorneys for Appellants _____

</div>

124

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF RELATED CASES ..................................................1

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF ISSUES ...................................................................2

STATEMENT OF THE CASE AND THE FACTS....................................3

SUMMARY OF ARGUMENT ..............................................................9

ARGUMENT ......................................................................................10

I. THE APPEAL SHOULD BE DISMISSED AS MOOT ...................10

    A. Timely Section 8 Filing is Mandatory and Cannot Be
Waived or Cured .....................................................................11

    B. The Registrations Were Not Cancelled or "Deemed
Cancelled" by the June 12 Judgment, But for Failure to
File Timely Section 8 Affidavits .............................................14

    C. *Patsy's* Demonstrates Why This Appeal Is Moot....................15

    D. This Appeal is Moot Because the Registrations Cannot
Be Restored .............................................................................22

    E. The Board's Judgment Should Not Be Vacated ......................24

II. RESPONDENT HAS WAIVED ITS CHALLENGE TO
PETITIONERS' STANDING............................................................26

    A. Respondent Waived Any Argument of Lack of
Statutory Standing By Not Raising It Below...........................26

    B. Respondent Forfeited a Trial on Standing by Refusing
to Comply with the Board's Discovery Order .........................30

    C. Respondent Waived a Challenge Both to Standing and
to the Sanctions Judgment by Presenting No Argument
Against Entry of Judgment Below or on Appeal......................31

III. PETITIONERS HAD STANDING BEFORE THE BOARD ............34

A.   Standing Before the Board Is Liberally Construed,
     Requiring Only a Real Interest in the Proceeding and a
     Reasonable Belief in Damage .................................................... 34

B.   Petitioners' Have Sufficiently Pled Standing ........................... 36

C.   Petitioners Do Not Need to Be Direct Competitors or
     Suffer Actual Economic Injury in the United States ............... 39

D.   The Board Has Routinely Held Petitioners Have
     Standing on Similar Facts and Despite the Embargo ............... 44

E.   U.S. Foreign Policy Strongly Supports a Finding of
     Standing Here ........................................................................... 47

F.   Respondent's Remaining Arguments Are Meritless ................ 50

CONCLUSION ...................................................................................... 53

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aqua Marine Supply v. AIM Machining, Inc.*,
   247 F.3d 1216 (Fed. Cir. 2001) ...........................................................22, 24

*ASARCO Inc. v. Kadish*,
   490 U.S. 605 (1989)...............................................................................27

*Assoc. pour la Defense … de Marc Chagall v. Bondarchuk*,
   82 U.S.P.Q.2d 1838 (TTAB 2007) ..................................................42

*Baron Philippe de Rothschild S.A. v. Styl-rite Optical Mfg. Co.*,
   55 U.S.P.Q.2d 1848 (TTAB 2000) ..............................................30, 31

*Bayer Consumer Care Ag v. Belmora LLC*,
   90 U.S.P.Q.2d 1587 (TTAB 2009) ..................................................29

*Bd. of Mississippi Levee Comm'rs v. E.P.A.*,
   674 F.3d 409 (5th Cir. 2012) .........................................................28

*Benedict v. Super Bakery, Inc.*,
   665 F.3d 1263 (Fed. Cir. 2011) ..........................................30, 31, 33

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
   683 F.3d 1083 (9th Cir. 2012) .......................................................28

*Brazoria County, Tex. v. E.E.O.C.*,
   391 F.3d 685 (5th Cir. 2004) .........................................................28

*Checkers Drive-In Rest., Inc. v. Comm'r*,
   51 F.3d 1078 (D.C. Cir. 1995)...................................................13, 21

*Church of Scientology of California v. U.S.*,
   506 U.S. 9 (1992)............................................................................22, 24

*Coach Serv., Inc. v. Triumph Learning LLC*,
   668 F.3d 1356 (Fed. Cir. 2012) ......................................27, 34, 35

*Commonwealth of Aruba v. Excelsior, Inc.*,
   5 U.S.P.Q.2d 1685 (TTAB 1987)..................................40, 41, 53

*Consorzio del Prosciutto di Parma v. Parma Sausage Prod., Inc.*,
   23 U.S.P.Q.2d 1894 (TTAB 1992)...................................................41

*Corporacion Habanos, S.A. v. Anncas,*
  88 U.S.P.Q.2d 1785 (TTAB 2008)..................................................45, 47, 48

*Corporacion Habanos, S.A. v. Anncas, Inc.*,
  Opp. No. 91165519 (TTAB Nov. 29, 2006) ..................................................37

*Corporacion Habanos, S.A v. Guantanamera Cigars Co.*,
  86 U.S.P.Q.2d 1473 (TTAB 2008), *remanded on other grounds*,
  729 F. Supp.2d 246 (D.D.C. 2010), *opp. sustained*, 102 U.S.P.Q.2d
  1085 (TTAB 2012) ........................................................................46, 47, 48

*Corporacion Habanos, S.A. v. Rodriguez,*
  99 U.S.P.Q.2d 1873 (TTAB 2011)..........................................................*passim*

*Corporacion Habanos, S.A. v. Xikar, Inc.*,
  2012 WL 5902079 (TTAB Nov. 13, 2012)............................................46, 48

*Corporation Cimex, S.A. v. DM Enters. & Distribs., Inc.*,
  2008 WL 5078739 (TTAB Nov. 17, 2008)............................................45, 47

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981)..................................................................................49

*Eastman Kodak Co. v. Bell & Howell Document Management Products Co.,*
  23 U.S.P.Q.2d 1878 (TTAB 1992), *aff'd*,
  994 F.2d 1569 (Fed. Cir. 1993) ...............................................................41

*Ecee, Inc. v. FERC*,
  645 F.2d 339 (5th Cir. 1981) .....................................................................27

*Estate of Biro v. Bic Corp*.,
  18 U.S.P.Q.2d 1382 (TTAB 1991)..............................................................53

*F.B.I. v. Societe: "M. Bril & Co.,"*
  172 U.S.P.Q. 310 (TTAB 1971)...................................................................43

*Flores v. Corporacion Habanos, S.A.*,
  2013 WL 6154120 (Fed. Cir. Nov. 21, 2013) ...........................................1, 41

*General Cigar Holdings, Inc. v. Altadis, S.A.*,
  205 F. Supp. 2d 1335 (S.D. Fla. 2002).........................................................51

*Golden Bridge Tech., Inc. v. Nokia, Inc*.,
  527 F.3d 1318 (Fed. Cir. 2008) ..................................................................29

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
  729 F. Supp. 2d 246 (D.D.C. 2010).......................................................27, 47

*Harjo v. Pro Football Inc.*,
    30 U.S.P.Q.2d 1828 (TTAB 1994) ................................................................53

*Hoover Co. v. Royal Appliance Mfg. Co.*,
    238 F.3d 1357 (Fed. Cir. 2001) ....................................................................29

*I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*,
    Canc. Nos. 92029614, *et al.* (TTAB June 28, 2007) ..............................17, 18

*In re Checkers of North America Inc.*,
    23 U.S.P.Q.2d 1451 (Comm'r 1992) ............................................................13

*In re Culligan Int'l Co.*,
    915 F.2d 680 (Fed. Cir. 1990) ......................................................................13

*In re Holland American Wafer Co.*,
    737 F.2d 1015 (Fed. Cir. 1984) ....................................................................13

*In re Mother Tucker's Food Experience (Canada) Inc.*,
    925 F.2d 1402 (Fed. Cir. 1991) ....................................................................12

*In re Precious Diamonds, Inc.*,
    635 F.2d 845 (CCPA 1980) ..........................................................................13

*Int'l Order of Job's Daughters v. Lindeburg & Co.*,
    727 F.2d 1087 (Fed. Cir. 1984) ....................................................................23

*Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*,
    823 F.2d 490 (Fed. Cir. 1987) ..................................................34, 35, 36, 42

*Lipton Indus., Inc. v. Ralston Purina Co.*,
    670 F.2d 1024 (CCPA 1982) ........................................................................35

*Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*,
    424 F.3d 1229 (Fed. Cir. 2005) ....................................................................35

*Mhany Mgmt. Inc. v. Incorporated Village of Garden City*,
    --- F. Supp. 2d ---, 2013 WL 6334107 (E.D.N.Y. Dec. 6, 2013) ................28

*MHW Ltd. v. Simex, Aussenhandelsgesellschaft Savelsberg KG*,
    59 U.S.P.Q.2d 1477 (TTAB 2000) ..............................................................30

*Nasatka v. Delta Scientific Corp.*,
    58 F.3d 1578 (Fed. Cir. 1995) ................................................................22, 24

*Order of Sons of Italy in America v. Profumi Fratelli Nostra AG*,
    36 U.S.P.Q.2d 1221 (TTAB 1995) ..............................................................53

*Paradissiotis v. Rubin,*
    171 F.3d 983 (5th Cir. 1999) ........................................................50

*Patsy's Italian Rest., Inc. v. Banas,*
    508 F. Supp. 2d 194 (E.D.N.Y. 2007).....................................*passim*

*Patsy's Italian Rest., Inc. v. Banas,*
    2007 WL 3232232 (E.D.N.Y. Oct. 31, 2007) ..............9, 15, 16, 20

*Pentax Corp. v. Robison,*
    135 F.3d 760 (Fed. Cir. 1998) .....................................................32

*Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.,*
    219 F.3d 895 (9th Cir. 2000) .......................................................28

*Petroleos Mexicanos v. Intermix S.A.,*
    97 U.S.P.Q.2d 1403 (TTAB 2010)....................................42, 43, 53

*Regan v. Wald,*
    468 U.S. 222 (1984)....................................................................49

*Ritchie v. Simpson,*
    170 F.3d 1092 (Fed. Cir. 1999) .......................................27, 34, 42

*Rolex Watch U.S.A., Inc. v. AFP Imaging Corp.,*
    107 U.S.P.Q.2d 1626 (TTAB 2013)............................................25

*Rolex Watch U.S.A., Inc. v. AFP Imaging Corp.,*
    480 Fed. Appx. 998 (Fed. Cir. 2012) .........................................22

*Selva & Sons, Inc. v. Nina Footwear, Inc.,*
    705 F.2d 1316 (Fed. Cir. 1983) ..................................................35

*SmithKline Beecham Corp. v. Apotex Corp.,*
    439 F.3d 1312 (Fed. Cir. 2006) ..................................................32

*Stocker v. General Conference Corp. of Seventh-Day Adventists,*
    39 U.S.P.Q.2d 1385 (TTAB 1996)..............................................53

*Stoller v. Ponce,*
    113 Fed. Appx. 403 (Fed. Cir. 2004) .........................................43

*Super Bakery, Inc. v. Benedict,*
    96 U.S.P.Q.2d 1134 (TTAB 2010), ), *aff'd, Benedict v. Super
    Bakery, Inc.,* 665 F.3d 1263 (Fed. Cir. 2011)...............................30

*Tanners' Council of America, Inc. v. Gary Industries, Inc.*,
    440 F.2d 1404 (CCPA 1971) ...................................................42, 51

*Tessera, Inc. v. ITC*,
    646 F.3d 1357 (Fed. Cir. 2011) ....................................................23

*U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*,
    513 U.S. 18 (1994)................................................................22, 24, 25

*U.S. v. Ford Motor Co.*,
    497 F.3d 1331 (Fed. Cir. 2007) ....................................................29

*Universal Oil Products Co. v. Rexall Drug & Chem. Co.*,
    463 F.2d 1122 (CCPA 1972) ........................................................51

*Young v. AGB Corp.*,
    152 F.3d 1377 (Fed Cir. 1998) .....................................................28

*Youngstown Sheet and Tube Co. v. Sawyer*,
    343 U.S. 579 (1952)......................................................................49

## Constitution, Statutes & Other Authorities:

U.S. Const. Art. III.............................................................................26

15 U.S.C. § 1052(a) .......................................................................*passim*

15 U.S.C. § 1052(d) ...........................................................................43

15 U.S.C. § 1052(e)(1)..........................................................................3

15 U.S.C. § 1052(e)(3) ...................................................................*passim*

15 U.S.C. § 1058................................................................................*passim*

15 U.S.C. § 1063.................................................................................27

15 U.S.C. § 1064.......................................................................1, 27, 34

15 U.S.C. § 1071...................................................................................1

15 U.S.C. § 1125(a) ............................................................................51

50 U.S.C. App. § 5(b) ...................................................................37, 49

31 C.F.R. § 515.206(a)(1) ................................................................37

31 C.F.R. § 515.527 ...................................................................47, 48, 49

31 C.F.R. § 515.528 ...................................................................47

31 C.F.R. § 515.545 ...................................................................37

37 C.F.R. § 2.120(g)(1)......................................................*passim*

37 C.F.R. § 2.132(b) ...................................................................31

37 C.F.R. § 2.134(b) ...................................................................26

37 C.F.R. § 2.160(a) ...................................................................12

37 C.F.R. § 2.164(b) ...................................................................12

Fed. Cir. R. 47.5 ...........................................................................1

Fed. R. Civ. P. 12(b)(1) ..............................................................28

Fed. R. Civ. P. 12(b)(6)...............................................................28

Fed. R. Civ. P. 37 .......................................................................30

Fed. R. Civ. P. 37(b)(2)...............................................................33

3 J. T. McCarthy, *McCarthy on Trademarks and Unfair Competition*
    (4th ed. 2013).............................................................35, 39

General Inter-American Convention for Trademark and Commercial
    Protection, 46 Stat. 2907...................................................3

Trademark Manual of Examining Procedure § 1604.17(c) (Oct. 2013 ed.)............12

Trademark Trial and Appeal Board Manual of Procedure § 806
    (3d ed. rev. 2 June 2013) ........................................*passim*

TBMP § 503.02..........................................................................29

## STATEMENT OF RELATED CASES

Appellees Corporacion Habanos, S.A. ("Habanos, S.A.") and Empresa Cubana del Tabaco ("Cubatabaco") (together, "Petitioners" or "Appellees") disagree with Appellant Cigar King, LLC's (generally "Respondent" or "Appellant") characterization of *Flores v. Corporacion Habanos, S.A., et al.*, No. 2013-1411 (Fed. Cir.), as a related case within the meaning of Fed. Cir. R. 47.5. This Court dismissed that appeal as untimely. *See Flores,* 2013 WL 6154120 (Fed. Cir. Nov. 21, 2013). Thus, it is no longer pending before this Court (or the Trademark Trial and Appeal Board (the "Board")). The Director of the United States Patent and Trademark Office ("PTO") has not acted on the "excusable neglect" request of the appellant in that case to file an untimely appeal. Further, Appellees are not aware of any other cases involving Appellees that may be directly affected by the Court's decision in this case, contrary to Appellant's reference to "several other" unidentified cases involving Appellees. Appellant's Brief ("Appellant Br."), at vii.

## STATEMENT OF JURISDICTION

Appellees agree with Appellant that the Board had jurisdiction of the Petition to Cancel under 15 U.S.C. § 1064. Although this Court had jurisdiction of this appeal under 15 U.S.C. § 1071 when filed, the appeal is now moot. *See* Point I, *infra*. The Board's June 12, 2013 final judgment ("June 12 Judgment"), Joint

Appendix ("A__") A1-9, 2013 WL 6056505 (TTAB June 12, 2013), was not "an *amended* final judgment." Appellant Br. at 1 (emphasis added). Appellees address the assertions in the second paragraph of Appellant's jurisdictional statement in the body of this Brief.

## STATEMENT OF ISSUES

1.     Whether this appeal is moot because both of Appellant's registrations at issue on appeal were cancelled by the PTO for failure to file timely affidavits under Section 8(a) of the Act, 15 U.S.C. § 1058(a) ("Section 8 Affidavits"), while this appeal was pending.

2.     Whether Appellant has waived or forfeited its challenge to Appellees' statutory standing by failing to contest it below; by failing and refusing to comply with the Board's discovery order; and/or by failing to argue before the Board or on appeal that entry of judgment as a sanction was an abuse of discretion or otherwise inappropriate.

3.     If not waived or forfeited, whether Appellees, Cuban cigar companies, had standing to petition to cancel registrations for the marks HAVANA SOUL and HABANA LEON for cigars not from Havana or Cuba, as, *inter alia*, geographically deceptive and primarily geographically deceptively misdescriptive (together, "geographically deceptive").

## STATEMENT OF THE CASE AND THE FACTS

Cigar King obtained registrations in the PTO for HAVANA SOUL and HABANA LEON, Registration Nos. 3,207,740 and 3,207,741, respectively, for "cigars made with Cuban seed tobacco" on February 13, 2007 (the "Registrations").  A55-56.  On November 1, 2010 (not "[d]ays before the trademarks were eligible to be 'incontestable'" in February 2012, Appellant Br. at 5), Petitioners, both Cuban entities, filed a timely petition to cancel the Registrations on the grounds that the HAVANA SOUL and HABANA LEON marks are geographically deceptive and deceptively misdescriptive, pursuant to section 2(a), (e)(1), (e)(3) of the Lanham Act, 15 U.S.C. § 1052(a), (e)(1), (e)(3); unregistrable under Articles 23-28 of the General Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907 ("IAC"), which prohibit the registration of marks in signatory countries containing qualifying geographical terms; and for fraud on the PTO for material misrepresentations of fact and material omissions of fact to overcome the PTO's initial refusal to register under section 2(a), (e)(3).  A57-72; *see* A1-2.  As detailed *infra*, Point III.B, Petitioners also pled their registered marks HABANOS UNICOS DESDE 1492 and LA CASA DEL HABANO, Cubatabaco's applied-for certification mark HABANOS, and Cubatabaco's appellations of origin HABANA and HABANOS.  Petition, ¶¶ 4-11 (A60-61).

3

On January 11, 2011, after Respondent failed to respond to the Petition, the Board issued a Notice of Default, with a February 10, 2011 deadline to show cause why default judgment should not be entered. A13. Belatedly, on February 23, 2011, Respondent moved to set aside the default, and its counsel represented that he had special expertise in this case and that "Registrant stand [*sic*] ready, willing, and able to defend this matter with its current counsel." A11 (Dkt. 8, at 2-3).

On February 25, 2011, Cigar King filed its Answer and Counterclaims for cancellation of Cubatabaco's LA CASA DEL HABANO registration for cigars and related products. A73-88. In its Answer, despite lengthy argument in the form of Affirmative Defenses, Cigar King did not raise an affirmative defense of standing or otherwise contest Petitioners' standing, A82-85 (and, contrary to Appellant's assertion, the Board in its June 12 Judgment did not "acknowledge[] that Cigar King raised the affirmative defense of standing," Appellant Br. at 3). Nor did Respondent move to dismiss for lack of standing. On April 28, 2011, the Board set aside its Notice of Default. A14-18.

On May 26, 2011, Cubatabaco moved to dismiss both counterclaims for failure to state a claim, A11 (Dkt. 12), which the Board granted on August 11, 2011, A19-32. During briefing on that motion, Respondent never claimed that Petitioners lacked standing to bring the Petition, A11 (Dkt. 14), nor did it move for judgment on the pleadings or summary judgment for lack of standing.

In September 2011, Petitioners served their Initial Disclosures, Interrogatories, and Document Requests; Respondent never served Initial Disclosures, and never sought any discovery from Petitioners. A89, A92-113. After Cigar King failed and refused to produce *any* responsive documents, or to respond to any of Petitioners' repeated requests over two months for responsive documents and complete interrogatory responses, A89-92, A114-31, Petitioners moved to compel discovery on January 5, 2012. A11 (Dkt. 17). In its opposition, Respondent did not challenge Petitioners' standing. A11 (Dkt. 21).

In its 22-page July 2, 2012 Order granting the motion to compel in substantial part, A33-54, 2012 WL 9506101 (TTAB July 2, 2012), the Board thoroughly detailed Respondent's extensive failures to comply with its discovery obligations, including its complete failure to produce *any* documents prior to the motion; its inadequate production of a few documents after the motion was filed; and its failure to provide complete interrogatory responses. The Board ordered Respondent to take several specific actions within 30 days (by August 1, 2012), including serving proper discovery responses and responsive documents. *See* July 2 Order, at 20-21 (A52-53).

The Board expressly warned, "*If respondent does not comply with this order, petitioners' remedy is to file a motion for sanctions* under Trademark Rule 2.120(g)(1)." *Id*. at 21 n.18 (emphasis added).

Respondent failed to comply or otherwise respond in any way to the July 2 Order. Therefore, on August 15, 2012, pursuant to the Board's warning, Petitioners filed a motion for sanctions, including entry of judgment, under Trademark Rule 2.120(g)(1). A4, A11 (Dkt. 30). Respondent did not respond to the motion for sanctions. Nevertheless, on October 12, 2012, the Board reset the time for briefing because the Board's August 16, 2012 Order suspending proceedings unrelated to the sanctions motion (but not the July 2 Order) was returned as undeliverable to Respondent. A4 & n.2; A11 (Dkt. 27).

In its November 1, 2012 Response to the sanctions motion, Respondent gave no explanation for its complete failure and refusal to comply with the July 2 Order, or its continuing refusal to comply in substantial part with that Order three months after the deadline, and did not argue that it had not received the July 2 Order or the motion for sanctions; that it could not comply with the July 2 Order; that it needed more time to comply; or even that it would comply or that it intended to comply. June 12 Judgment at 4-5 (A4-5) (quoting Respondent's entire response).

Instead, Respondent *agreed* that it should be sanctioned, *id*. at 5-8, but made "no arguments as to why its proposed lesser sanctions are appropriate and why entry of judgment is not." *Id*. at 6.[1] Respondent proposed that "it be given the

---

[1] Respondent proposed that it "'voluntarily takes the sanction of having all of its affirmative defenses stricken with the exception of the affirmative defense that Petitioners lack standing. Registrant also voluntarily accepts that it will not be able

opportunity to post a defense that Petitioners' [*sic*] lack standing and to defend against the third and final element of the Petitioners' [section] 2(e)(3) claim," *id*. at 5 (brackets added by Board), despite its continuing refusal to comply with the July 2 Order. Respondent, however, *made no argument, showing, or explanation whatsoever that Petitioners did lack standing*, and gave no explanation why it had not previously challenged, or even mentioned Petitioners' standing, either by motion or in response to the prior motions during the previous two years of proceedings. *See id*. Respondent also made no argument why it should be permitted to continue to refuse to comply with the July 2 Order, and yet continue to defend the proceeding. *Id*.

The Board found that Respondent had failed to comply with at least four of the specific requirements of the July 2 Order. *Id*. at 6-7. The Board further "construe[d] respondent's response to the motion for sanctions as affirmatively stating it will not provide the discovery that the Board required in the July 2, 2012 order," and that "respondent has deliberately prevented petitioner from obtaining information to present its case. Respondent has evaded and frustrated petitioners' attempts to secure discovery." *Id*. at 7.

Therefore, the Board held:

---

to rely upon certain documents requested but not produced as evidence in this matter relating to the first two elements of Petitioners' 2(e)(3) claim.'" June 12 Judgment at 5 (quoting Respondent).

> no less drastic remedy [than entry of judgment] would be effective, and
> there is a strong showing of willful evasion….Respondent's willful
> noncompliance with the July 2, 2012 order and deliberate action to
> impair petitioner's ability to present its case after having been advised
> of the possible consequences warrants entry of the sanction requested
> by petitioners.

*Id.* at 8.  The Board then ruled, "The petition to cancel is granted, judgment is

hereby entered against respondent, and Registration Nos. 3207740 and 3207741

*will be cancelled in due course." Id.* at 9 (emphasis added).  The June 12

Judgment did not itself cancel the Registrations, which is carried out by the PTO

Director, not the Board.  *See* Trademark Trial and Appeal Board Manual of

Procedure § 806 (3d ed. rev. 2 June 2013) ("TBMP"); Point I.A, B, *infra*.  Also on

June 12, 2013, Respondent filed a Notice of Appeal to this Court.

Consistent with PTO policy in light of the timely Notice of Appeal, the

Director *did not* cancel the Registrations pursuant to the June 12 Judgment, *see*

TBMP § 806; Point I, *infra*, and the Registrations remained "live" on the Principal

Register.  However, on August 13, 2013, the final "grace period" deadline for

Respondent to file the Section 8 Affidavits expired, without the mandatory filing

for either Registration.  Therefore, the PTO cancelled the Registrations for *failure*

*to file the Section 8 Affidavits, and NOT pursuant to the Board's June 12*

*Judgment.*  A141-42, 149-50.

Because the Registrations were cancelled for failure to file the Section 8

Affidavits, Petitioners moved to dismiss the appeal as moot ("Mootness Motion").

8

On December 30, 2013, this Court denied the motion, noting the parties'
disagreement on whether the Registrations should be "deemed cancelled" by the
June 12 Judgment, and "at least some suggestion by other courts that a section 8(a)
declaration does not need to be filed if the registration has already been canceled,"
citing *Patsy's Italian Rest., Inc. v. Banas*, 2007 WL 3232232, at *2 (E.D.N.Y. Oct.
31, 2007) (*Patsy's II*).  Dec. 30 Order, at 2.  This Court instructed Petitioners "to
present their jurisdictional arguments for dismissal in their brief."  *Id*.

## SUMMARY OF ARGUMENT

**I.**     The appeal should be dismissed as moot.  The PTO cancelled the
Registrations for failure to file the mandatory Section 8 Affidavits, a failure that
cannot be cured.  Pursuant to written PTO policy, *see* TBMP § 806, and strongly
supported by decisions in the *Patsy's* case, the Registrations were neither cancelled
nor "deemed cancelled" by the June 12 Judgment, because this appeal was still
pending at the August 13, 2013 Section 8 deadline.  This appeal is moot because
the Registrations will remain cancelled, regardless how this Court might rule on
any of the issues before it.  The Board's decision should not be vacated, because
Respondent is solely responsible for the appeal becoming moot.

**II.**     A challenge to standing before the Board, which is statutory, not
constitutional, can be waived.  Respondent has waived a challenge to Petitioners'
standing by:  1) failing to make any arguments before the Board challenging

Petitioners' standing; 2) refusing to comply with the Board's discovery order; and 3) failing to argue below or here that entry of judgment as a sanction was an abuse of discretion or otherwise inappropriate.

**III.**   Petitioners, as owners in the PTO of the pleaded registered and applied-for cigar marks and of the pleaded appellations of origin for Cuban cigars and tobacco, and as the advertisers, including in the United States, and sellers, exporters, marketers, and certifiers of Cuban-origin cigars throughout the world (except the United States due to the embargo), have standing before the Board, based on their real interest in this proceeding and reasonable belief in damage by the registrations of the geographically deceptive HABANA LEON and HAVANA SOUL marks for non-Cuban cigars. Respondent's novel assertion that standing requires competitive economic injury through lost business in the United States is contrary to long-settled standing doctrine, and is inconsistent with United States foreign policy, which authorizes Cuban nationals to register and to advertise their marks and to bring opposition and cancellation proceedings to protect their interests.

## ARGUMENT

## I.   THE APPEAL SHOULD BE DISMISSED AS MOOT

The Registrations were not cancelled pursuant to the June 12 Judgment, but for failure to file the mandatory Section 8 Affidavits, a reason independent of, and unrelated to, any issue before the Board or on appeal. Neither this Court, nor the

Board, nor the Director has the authority to waive or to extend the Section 8 filing deadline.  This Court cannot grant Respondent any effectual relief, because the Registrations will remain cancelled, regardless how this Court might rule on the issues before it.  Thus, this appeal should be dismissed as moot.

## A. Timely Section 8 Filing is Mandatory and Cannot Be Waived or Cured

Under Section 8(a) of the Act, Respondent was required to file affidavits (or declarations) stating that the registered marks were in use in commerce on the identified goods (or showing excusable non-use) *no later than* six (6) years and six (6) months after the date of registration,[2] *i.e.,* no later than August 13, 2013, as the marks were registered on February 13, 2007.  If a Section 8 Affidavit is not timely

---

[2]  15 U.S.C. § 1058(a) provides in pertinent part:

> (a) Time periods for *required* affidavits. Each registration shall remain in force for 10 years, except that the registration of any mark *shall be canceled* by the Director unless the owner of the registration files in the [USPTO] affidavits that meet the requirements of subsection (b), *within the following time periods:*

> (1) Within the 1-year period immediately preceding the expiration of 6 years following the date of registration under this [Act]….

> (3) The owner may file the affidavit *required under this section within the 6-month grace period immediately following the expiration of the periods* established in paragraphs (1) and (2) ….

(Emphasis added).  Taken together, subsections (a)(1) and (a)(3) set an absolute deadline of six years and six months from the date of registration to file the Section 8 Affidavit (subsection (a)(2) addresses the time for filing the Section 8 Affidavit in connection with the recurring 10 year renewal periods).

filed, then the "mark *shall* be canceled by the Director." 15 U.S.C. § 1058(a) (emphasis added). In its response to the Mootness Motion, Respondent did not deny that it failed to file Section 8 Affidavits by the August 13, 2013 deadline (or thereafter), or that the PTO cancelled the registrations for failure to file the Section 8 Affidavits, as shown by the PTO records. A141-42, 149-50.

Cancellation for failure to comply with the statutory Section 8 deadline is mandatory, final, and cannot be cured. *See e.g., In re Mother Tucker's Food Experience (Canada) Inc.*, 925 F.2d 1402, 1405 (Fed. Cir. 1991) ("compliance with the statutory requirements [of Section 8] is mandatory," which "could not be cured," or waived). *See* Trademark Manual of Examining Procedure § 1604.17(c) (Oct. 2013 ed.) ("Defects That *Cannot be Cured* After Expiration of the Grace Period": "The registration *will be cancelled* if an affidavit or declaration of use or excusable nonuse is not filed within the time period set forth in § 8 of the Act (including the grace period). 15 U.S.C. §1058(a). *Untimely filing cannot be cured after expiration of the grace period,* even with a deficiency surcharge.") (emphasis added); 37 C.F.R. § 2.164(b) ("If the affidavit or declaration is not filed within the time periods set forth in section 8 of the Act, *the registration will be cancelled.*") (emphasis added); *id*. § 2.160(a) ("During the following time periods, the owner of the registration *must file* an affidavit or declaration of continued use or excusable nonuse, or the registration *will be cancelled*") (emphasis added).

Neither the PTO nor this Court has any power to revive or restore a registration that was cancelled for failure to file a timely Section 8 Affidavit. *See, e.g., Checkers Drive-In Rest., Inc., v. Comm'r,* 51 F.3d 1078, 1080, 1085 (D.C. Cir. 1995) (bankruptcy automatic stay does not excuse failure to file timely Section 8 Affidavit for registration that is subject of stayed cancellation petition; "*all* registrants must file" a timely Section 8 Affidavit; "[i]f a registrant fails to file the required affidavit, the Commissioner by law *must* cancel its registration"; "Congress made no exception for the innocent or the negligent") (emphasis added), *affirming In re Checkers of North America Inc.*, 23 U.S.P.Q.2d 1451, 1453-54, 1455 (Comm'r 1992) ("the Trademark Rules contemplate *independent and contemporaneous* Section 8 filings and cancellation proceedings involving the same registration"; "the requirement to file [a timely] affidavit … is statutory and the Commissioner has no authority to waive it") (emphasis added); *In re Precious Diamonds, Inc.*, 635 F.2d 845, 847 (CCPA 1980) ("failure of the registrant to file a [Section 8] declaration within the statutory period is not a 'minor technical defect'"); *In re Holland American Wafer Co.,* 737 F.2d 1015, 1018 (Fed. Cir. 1984) ("Timeliness set by statute [for Section 9 renewal application] is not a minor technical defect which can be waived by the Commissioner."); *In re Culligan Int'l Co.*, 915 F.2d 680, 683 (Fed. Cir. 1990) (same).

**B. The Registrations Were Not Cancelled or "Deemed Cancelled" by the June 12 Judgment, But for Failure to File Timely Section 8 Affidavits**

In its December 30, 2013 Order, this Court raised the question whether the Registrations should be "deemed cancelled" by the Board's June 12 Judgment, and if so, whether that rendered the otherwise mandatory Section 8 filing inapplicable. In fact, the PTO has a clear policy, which was followed here, that the Director *shall not* cancel a registration pursuant to a Board decision granting a cancellation petition until the proceeding has become final, which does not occur until any appeals have been determined:

> When a decision of the Board granting a petition for cancellation becomes *final*, the subject registration is *cancelled by separate order of the Director*. Upon the cancellation order by the Director, the cancellation proceeding is terminated in the same manner as an opposition.

TBMP § 806(9) (emphasis added). A proceeding becomes final only "when the time for filing an appeal from a decision of the Board determining the case has expired, and no appeal has been filed, or *when any appeals filed have been determined*." *Id*. (first unnumbered para.) (emphasis added). Thus, Respondent was simply incorrect in asserting that "the Board's decision that the Appellees' trademark registrations were cancelled was final." Appellant's Opposition to Appellees' Motion to Dismiss Appeal ("Mootness Opp."), at 4.

14

Because Respondent had filed a timely appeal, which was not determined prior to the August 13, 2013 Section 8 deadline, the Director had not cancelled the Registrations based on the June 12 Judgment. Moreover, as TBMP § 806 makes explicit, a registration is not "deemed cancelled" by a Board decision granting a petition to cancel. Rather, the registration remains "live" on the PTO Register, until any appeals are finally determined.

Petitioners have not located any authority suggesting, contrary to TBMP § 806, that a registration is either automatically cancelled, or "deemed cancelled," by a Board decision granting a petition to cancel, prior to the issuance of a "separate order of the Director" cancelling the registration, which is properly issued only when the proceeding becomes final, as defined in § 806. Thus, because the June 12 Judgment neither cancelled the Registrations, nor caused them to be "deemed cancelled," Respondent, like every other registrant, was required to file timely Section 8 Affidavits. Because Respondent failed to do so, the Director properly cancelled the Registrations for failure to file the Section 8 Affidavits, A141-42, 149-50, these cancellations cannot be cured, and this appeal is moot.

## C. *Patsy's* Demonstrates Why This Appeal Is Moot

The proposition "that a section 8(a) declaration does not need to be filed *if the registration has already been canceled*," Dec. 30 Order, at 2 (citing *Patsy's II,* emphasis added), is irrelevant here, because, unlike in *Patsy's II*, the Registrations

15

had not "*already been cancelled*" (or "deemed cancelled") prior to the Section 8 filing deadline, as shown above. Likewise, as shown, nothing in the Act, the Rules, or any decisional law relieves a registrant from its Section 8 filing obligations during the pendency of an appeal following a Board cancellation judgment, when the registration has *not* "already been canceled" by "separate order of the Director." TBMP § 806.

The very complicated *Patsy's* litigation in fact directly supports Petitioners' position that this appeal is moot. The relevant part of *Patsy's* grew out of a cancellation proceeding (Canc. No. 92029614) to cancel *two* registrations owned by I.O.B. Realty, Inc. ("IOB"), not merely the one registration (Reg. No. 2,213,574 ("the '574 registration") addressed in *Patsy's II*. *See Patsy's Italian Rest., Inc. v. Banas*, 508 F.Supp.2d 194 (E.D.N.Y. 2007) (*Patsy's I*) (addressing the '574 registration and Reg. No. 1,975,110 ("the '110 registration")), *recon. denied*, *Patsy's II*, 2007 WL 3232232. As explained below, the disposition of the '110 registration unequivocally proves the obligation of a registrant to file a timely Section 8 Affidavit *after* the Board grants a petition to cancel, when the Section 8 deadline occurs *before* the Director acts upon the Board's cancellation order, precisely as occurred here.

The disposition of the '574 registration further supports a finding of mootness here. The '574 registration involved "a tortured procedural history,

resulting in confusion and mistake," in which "the USPTO erred in handling the matter," caused in substantial part by the parties' failure to notify the Board that its judgment at issue had been appealed. *I.O.B. Realty, Inc. v. Patsy's Brand, Inc*., Canc. Nos. 92029614, *et al*., at 10-11, 15 (TTAB June 28, 2007) (A188-89, A193). This series of errors, *unlike here*, resulted in the Director *actually, but erroneously, cancelling* the '574 registration *prior* to the Section 8 deadline, based on the Board judgment. *See Patsy's I*, 508 F.Supp.2d at 208 ("actions of the PTO … are not only confusing to say the least, but contradict the findings, recommendations and spirit of the Second Circuit's decision in [prior] litigation").

Petitioners summarize here that tortured procedural history and series of PTO and Board errors involving the '110 and '574 registrations, which are detailed in *Patsy's I*, 508 F.Supp.2d at 200, 203-06, 210-12, and exhaustively chronicled in the Board's June 28, 2007 Order, A179-213. The '110 registration issued on May 21, 1996 and the Section 8 deadline was November 21, 2002; the '574 registration issued on December 29, 1998, and the Section 8 deadline was June 29, 2005. *Patsy's I*, 508 F.Supp.2d at 200; A207. On September 4, 2002 (*prior* to the Section 8 deadlines), the Board granted Patsy's cancellation petition (involving both the '110 and '574 registrations), but stated only that the '110 registration "will be cancelled in due course." A175-76; A189.

17

Crucially for purposes here, although the Director had not yet cancelled the '110 registration per the Board's September 4 Judgment, IOB failed to file a Section 8 Affidavit by the November 21, 2002 deadline. Not until May 27, 2003, did the PTO (erroneously) issue the order cancelling both the '110 and '574 registrations, in express reliance on the Board's September 4, 2002 judgment. A177; A191. The PTO's cancellation order premised on that judgment was issued in error, because two weeks earlier the Board had ordered additional briefing in light of developments in federal court litigation, which "by necessity vacated the earlier [September 4, 2002] judgment." June 28, 2007 Order, at 26-27 & n.22 (A204-05); *see id*. at 11-13 (A189-91); *Patsy's I,* 508 F.Supp.2d at 210-11.

After a lengthy hiatus, the Board, in its June 28, 2007 Order, vacated the PTO's May 27, 2003 order cancelling both registrations, because it vacated its September 4, 2002 judgment, and described the cancellation of the '574 registration as apparently "a clerical error," by the PTO "issued without any apparent legal basis." A205. However, because IOB had not filed timely Section 8 Affidavits for either registration, the Board ordered that the files be "updated to indicate cancellation of those registrations pursuant to Trademark Act § 8." A213; *see* A207-08.

IOB then moved in federal court to correct the Register *only* as to the '574 registration, *not* the '110 registration, because the '110 registration had been

*properly cancelled* due to IOB's failure to file the Section 8 Affidavit by the

November 21, 2002 deadline, *before* the Director cancelled the registration on May

27, 2003, pursuant to the Board's September 4, 2002 judgment, as the District

Court explained:

> Defendants concede that Registration No. 1,975,110 … was *properly*
> *cancelled* due to I.O.B.'s *failure to file an affidavit pursuant to Section*
> *8 … prior to the PTO's cancellation of the registration* on May 27,
> 2003.  Defendants therefore *do not seek restoration* of that mark.

*Patsy's I*, 508 F.Supp.2d at 206 n.8 (emphasis added).

That is precisely the situation here:  The Registrations were "properly

cancelled due to [Cigar King's] failure to file a [Section 8] affidavit … prior to the

PTO's cancellation of the registration," *id*., pursuant to the June 12 Judgment, and

which, therefore, cannot be restored (the only difference being that here, the PTO

*never* cancelled pursuant to the Board's judgment (consistent with PTO policy, *see*

TBMP § 806), but for failure to file the Section 8 Affidavits).  Thus, as *Patsy's I*

makes clear, a registrant is *not relieved* of its statutory Section 8 filing obligation

when the Section 8 deadline comes *after* the Board's judgment granting the

petition to cancel, but *before* the Director acts on that judgment (and under TBMP

§ 806, the Director will not act on that judgment until any appeal is finally

determined).

Unlike the '110 registration, the time to file the Section 8 affidavit for the

'574 registration (between December 29, 2003-June 29, 2005) had *neither opened*

*nor terminated* when the Director erroneously cancelled the registrations on May 27, 2003, per the Board's September 4, 2002 judgment. In *Patsy's I*, after chronicling "the *unprecedented* sequence of events here," which "would have confused even the most experienced intellectual property attorneys," and noting the Board's admission that the PTO would have rejected a Section 8 Affidavit from IOB "'*while its registration[] w[as] in cancelled status*,'" the court found that IOB had "acted reasonably in not filing a Section 8 affidavit because the Registration No. 2,213,574 *had been cancelled*," and, therefore, restored the '574 registration. 508 F.Supp.2d at 212 (emphasis added) (quoting Board's June 28, 2007 Order at 29). As the court explained, "Although section 8's requirements are mandatory, … nothing in its language suggests that its provision apply once the [PTO] has *already canceled the registration*." *Patsy's II*, 2007 WL 3232232, at *2.

In sharp contrast, here the PTO had *not* "already canceled the [R]egistration[s]" before the Section 8 deadline. Moreover, here, the PTO followed its well-settled written policy of *not* cancelling the Registrations based on the Board's June 12 Judgment while the appeal was pending. *See* TBMP § 806. There were no *mistakes or errors* by the Board or the PTO here, or any actions by Petitioners, that could possibly have caused any confusion as to Respondent's statutory obligation to file timely Section 8 Affidavits. There is nothing *unprecedented* here; rather, this is a routine situation that occurs every time a

Section 8 deadline arises between the time the Board grants a petition to cancel and an appeal is finally determined. Yet no cases excuse a registrant's failure to file a timely Section 8 Affidavit pending an appeal and before the PTO actually cancels the registration. Just as in *Checkers Drive-in Restaurants*, *supra*, Appellant "failed to avail itself of a simple means of avoiding this result" by filing the Section 8 Affidavits; at the very least, it "had ample time to make … an inquiry" into whether its Section 8 obligation was somehow obviated by the June 12 Judgment. 51 F.3d at 1085-86.

As the foregoing makes clear, and consistent with the court's treatment of both registrations in *Patsy's,* the Section 8 filing obligation remained, the Registrations were properly cancelled for failure to file the Section 8 Affidavits, and this appeal is moot. Patsy's demonstrates that Appellant was incorrect that it "was procedurally incapable of filing a Section 8 Affidavit because the subject trademarks [*sic*] registrations were all ready [*sic*] scheduled to be cancelled pursuant to the Board's Order 'in due course,'" or that, after a Board decision granting a cancellation petition that is under appeal, but prior to actual cancellation by the PTO, "there are no live trademark registrations which require a Section 8 Affidavit to be filed." Mootness Opp. at 3-4.

### D. This Appeal is Moot Because the Registrations Cannot Be Restored

"It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of California v. U.S.*, 506 U.S. 9, 12 (1992) (internal quotation omitted). "For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed" as moot. *Id.* (internal quotation omitted); *see U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 21 (1994) ("a case must exist at all the stages of appellate review"); *Nasatka v. Delta Scientific Corp.*, 58 F.3d 1578, 1580-81 (Fed. Cir. 1995) ("The test for mootness ... is whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation).") (internal quotation omitted); *Aqua Marine Supply v. AIM Machining, Inc.*, 247 F.3d 1216, 1220 (Fed. Cir. 2001) ("a case becomes moot if, through the action of the party seeking review, the immediate controversy is terminated").

In a closely analogous situation, *Rolex Watch U.S.A., Inc. v. AFP Imaging Corp.*, 480 Fed.Appx. 998 (Fed. Cir. 2012), this Court held the appeal moot where the applicant had abandoned its trademark application that was the subject of an

opposition and appeal:  "By withdrawing its application, [applicant] has removed any case or controversy for this court to resolve…. Any outcome [on appeal] would be meaningless legally, because the opposed [application] has been withdrawn."  *Id.* at 999.  Likewise, the only *legal* controversy between the parties here – whether the Registrations should be cancelled, *see Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091 (Fed. Cir. 1984) ("The legal issue in a cancellation proceeding is the right to register a mark.") – ended when Respondent failed to file the Section 8 Affidavits, resulting in the PTO cancelling the Registrations, which cannot be undone.  For purposes of mootness, there is no relevant distinction between an abandoned application and an abandoned registration.  *See also Tessera, Inc. v. ITC*, 646 F.3d 1357, 1371 (Fed. Cir. 2011) (where two patents at issue had expired during appeal, "nothing remains before the Commission with respect to the [expired] patents.  Accordingly, the portion of the appeal pertaining to the [expired] patents is now moot.").[3]

Thus, however much the parties might want an opinion from this Court on the cancellation issues raised below or here, such opinion would plainly be a

---

[3] Respondent's assertion, Mootness Opp. at 5, that this appeal is not moot because this Court appears be addressing for the first time mootness resulting from a Section 8 cancellation (although it has found mootness for abandoned applications and expired patents), is meritless.  Rather, the apparent novelty of the precise question speaks volumes about the ease of filing a Section 8 Affidavit, and the common knowledge of its absolute, unconditional requirement, including during the pendency of an appeal.

prohibited advisory one, as it could not alter the fact that the Registrations will remain cancelled.  Because this Court cannot grant Appellant "any effectual relief whatever," *Church of Scientology*, 506 U.S. at 12, or any relief that, "if granted, [would] make a difference to the legal interests of the parties," *Nasatka*, 58 F.3d at 1581 (internal quotation omitted), this appeal is moot and must be dismissed.

### E. The Board's Judgment Should Not Be Vacated

Although the appeal is moot, this Court should not vacate the June 12 Judgment.  Vacatur of the judgment on appeal is appropriate only when the appeal became moot either through "happenstance" or "where mootness results from the unilateral action of the party who prevailed in the lower court."  *U.S. Bancorp*, 513 U.S. at 23 (internal quotation omitted); *see id.* at 25.  When the appellant by its own conduct, as here, has rendered the appeal moot, then it is not entitled to the "extraordinary remedy of vacatur."  *Id.* at 24, 26 ("The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action."); *see Aqua Marine Supply,* 247 F.3d at 1221 (where mootness was "the result of Aqua Marine's own action," "vacatur is not appropriate…. There are no *exceptional circumstances* here that would support departure from *the general rule against vacatur*") (emphasis added).  Here, Appellant's failure to file the Section 8 Affidavits was indisputably not an act of

"happenstance" or of Petitioners, but solely the responsibility of Appellant, which was represented by counsel.

There are no "exceptional circumstances," *id.,* that would entitle it to the "extraordinary remedy of vacatur," *U.S. Bancorp,* 513 U.S. at 26. There is no unfairness in leaving the Board's Judgment in place, while dismissing this appeal, when Appellant is solely responsible for the mootness. Indeed, the precise point of *U.S. Bancorp* is that an appellant responsible for mootness "has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Id*. at 25-27.[4] There is also nothing unfair in the Board's Judgment continuing to operate as an adjudication on the merits, with the ensuing collateral consequences, when the Board expended the resources to render a final judgment, and then Appellant rendered the appeal moot. *Id*. at 25-26 (further explaining that adjudications are "valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest

---

[4]  Respondent's reliance on *Rolex,* Mootness Opp. at 3-4, is misplaced, because there the *prevailing* party caused the mootness, which prevented the losing party from pursuing an appeal. In that circumstance, the Board properly vacated its judgment *in favor* of the party that had *prevented* the appeal. *See Rolex Watch U.S.A., Inc. v. AFP Imaging Corp.*, 107 U.S.P.Q.2d 1626 (TTAB 2013).

would be served by a vacatur.") (internal quotations omitted).[5]

## II. RESPONDENT HAS WAIVED ITS CHALLENGE TO PETITIONERS' STANDING

Standing before the Board, an administrative agency, is statutory, not

constitutional. As such, a challenge to standing on appeal can be waived. Here,

Respondent has waived (or forfeited) a challenge to Petitioners' statutory standing

in three ways: 1) it failed to make any arguments before the Board challenging

Petitioners' standing; all of its arguments were raised for the first time on appeal;

2) it refused to comply with the Board's discovery order; and 3) it failed to make

any argument below that entry of judgment as a sanction would be improper, or

even that the Board should not enter judgment, and it has made no argument here

that the Board abused its discretion in entering judgment as a sanction.

### A. Respondent Waived Any Argument of Lack of Statutory Standing By Not Raising It Below

As Respondent acknowledges, Appellant Br. at 8-9, "[t]he 'case' and

'controversy' restrictions [of U.S. Const. Art. III] do not … apply to matters before

administrative agencies. Instead, for an agency such as the PTO, standing is

---

[5] Respondent mistakenly relied on 37 C.F.R. § 2.134(b) to claim that the June 12 Judgment should be vacated. Mootness Opp. at 6-7. By its express terms, section 2.134(b) applies only to the Board, not this Court, *i.e.*, when the Section 8 cancellation occurs during *pending* proceedings *before the Board* and prior to final adjudication, and addresses whether to enter judgment *against* the registrant *after* a Section 8 cancellation. Although not applicable here, section 2.134(b) does make explicit that there is no inconsistency, inequity or prohibition in both a Section 8 cancellation *and* entry of judgment against the registrant on the petition to cancel.

conferred by statute." *Coach Serv., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 1376 (Fed. Cir. 2012) (internal citations omitted). "Thus, the starting point for a standing determination for a litigant before an administrative agency is not Article III, but is the statute that confers standing before that agency. In the case at hand, the starting point for the standing determination of the [petitioners] is § [14] of the Lanham Act." *Ritchie v. Simpson*, 170 F.3d 1092, 1095 (Fed. Cir. 1999);[6] *see Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,* 729 F.Supp.2d 246, 251 (D.D.C. 2010) ("the standing requirements differ before an administrative agency like the TTAB.  Statute, rather than the 'case or controversy' requirements, confers standing requirements before an agency") (internal citation omitted); *see also Ecee, Inc. v. FERC*, 645 F.2d 339, 349 (5th Cir. 1981) ("Administrative adjudications ... are not an article III proceeding to which either the 'case or controversy' or prudential standing requirements apply").

Constitutional, that is, Article III, standing cannot be waived, and can be raised at any time, including *sua sponte* by an appellate court.  *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 611 (1989).  However, non-constitutional standing, such as prudential standing, or as here, statutory (or administrative) standing, can be

---

[6]  Respondent erroneously quoted section 13 of the Act, 15 U.S.C. § 1063, Appellant Br. at 9, which applies to opposition, not cancellation proceedings. However, standing requirements for cancellation and opposition proceedings are construed consistently despite slight differences in statutory wording between § 13 and § 14, 15 U.S.C. § 1064.  *See Ritchie*, 170 F.3d. at 1095 n.2.

waived, just like any other unasserted issue or argument. *See Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083, 1090 (9th Cir. 2012) (ERISA claim; "we presume that statutory standing may be waived"); *Brazoria County, Tex. v. E.E.O.C.*, 391 F.3d 685, 691 (5th Cir. 2004) ("Because 'standing' for a [] proceeding before the EEOC is a matter of identifying the appropriate statutory harm (and not a constitutional limit on jurisdiction), we doubt whether the issue can be raised for the first time in our court."); *Mhany Mgmt. Inc. v. Incorporated Village of Garden City,* --- F.Supp.2d ---, 2013 WL 6334107, at *16 (E.D.N.Y. Dec. 6, 2013) ("Statutory standing arguments, unlike constitutional standing arguments, can be waived."); *see also Bd. of Mississippi Levee Comm'rs v. E.P.A.*, 674 F.3d 409, 417-18 (5th 2012) ("Unlike constitutional standing, prudential standing arguments may be waived…. Because the EPA failed to make this argument to the district court, we hold that the EPA waived its prudential standing challenge."); *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.,* 219 F.3d 895, 899-900 (9th Cir. 2000) ("a party waives objections to nonconstitutional standing not properly raised before the district court.").

Consistent with the non-jurisdictional, waivable nature of Board standing, a challenge to standing on a motion to dismiss is addressed as a failure to state a claim under Fed. R. Civ. P. 12(b)(6), not a lack of jurisdiction under Rule 12(b)(1). *See Young v. AGB Corp.*, 152 F.3d 1377, 1378-79 (Fed Cir. 1998); *Bayer*

*Consumer Care Ag v. Belmora LLC*, 90 U.S.P.Q.2d 1587, 1590 (TTAB 2009); TBMP § 503.02.

This Court generally will not address issues or arguments not presented to the Board or a district court. *See Hoover Co. v. Royal Appliance Mfg. Co.,* 238 F.3d 1357, 1361 (Fed. Cir. 2001) (Board proceeding); *U.S. v. Ford Motor Co*., 497 F.3d 1331, 1337 (Fed. Cir. 2007) (court action). Respondent has made no argument that one of the "limited circumstances" in which this Court will address issues or arguments not raised below applies here. *See Golden Bridge Tech., Inc. v. Nokia, Inc*., 527 F.3d 1318, 1322-23 (Fed. Cir. 2008).

The first and only time Respondent mentioned standing in the proceeding below was in its response to the motion for sanctions. Its statement on standing in its entirety was: "Registrant voluntarily takes the sanction of having all of its affirmative defenses stricken with the exception of the affirmative defense that Petitioners lack standing [which Respondent in fact never asserted]….Registrant merely requests that it be given the opportunity to post a defense that Petitioners' [*sic*] lack standing." June 12 Judgment at 5 (quoting Respondent). Because Respondent never presented any argument below that Petitioners lacked standing, despite numerous opportunities to do so, its argument that Petitioners lack standing, presented for the first time in this appeal, has been waived, and, therefore, should not be considered by this Court.

29

## B. Respondent Forfeited a Trial on Standing by Refusing to Comply with the Board's Discovery Order

Even if not waived for failure to make any arguments before the Board against Petitioners' standing, Respondent waived and/or forfeited "address[ing] this issue in a trial brief," Appellant Br. at 4, by willfully violating and refusing to comply with the July 2 Order compelling discovery. No party, before the Board or any court, is free to refuse to comply with a discovery order, and yet insist on "a full trial on the merits of the case," *id.* at 2, or to pick and choose issues that it wants to try, as Respondent proposed. *See* June 12 Judgment at 5. Respondent cites no contrary authority, and any such rule would gut the sanctions regime set out in 37 C.F.R. § 2.120(g)(1) and Fed. R. Civ. P. 37. *See* Point II.C, *infra*. Indeed, Respondent made no argument below or here that it has the right both to refuse to comply with a Board discovery order *and* to challenge Petitioners' statutory standing at a trial or on appeal.

Nor is there any requirement that the Board make any finding that a plaintiff has statutory standing in its decision granting a sanction of judgment. *See, e.g., Super Bakery, Inc. v. Benedict*, 96 U.S.P.Q.2d 1134 (TTAB 2010) (no mention of standing), *aff'd, Benedict v. Super Bakery, Inc.*, 665 F.3d 1263 (Fed. Cir. 2011) (same); *MHW Ltd. v. Simex, Aussenhandelsgesellschaft Savelsberg KG*, 59 U.S.P.Q.2d 1477, 1478 (TTAB 2000) (same); *Baron Philippe de Rothschild S.A. v. Styl-rite Optical Mfg. Co.,* 55 U.S.P.Q.2d 1848 (TTAB 2000) (same).

Moreover, this case did not present any novel standing issue to the Board, as it has repeatedly held that these Petitioners have standing to challenge geographically deceptive cigar marks on very similar facts as here, *see* Point III.D, *infra*, and Respondent raised no argument that Petitioners in fact lacked statutory standing. Finally, Respondent's assertion that it had no opportunity to address Petitioners' standing during the two years of proceedings below is meritless.

### C. Respondent Waived a Challenge Both to Standing and to the Sanctions Judgment by Presenting No Argument Against Entry of Judgment Below or on Appeal

Respondent waived both a challenge to standing and to whether the Board properly entered judgment as a sanction by presenting no arguments against that sanction to the Board or here. The Board did not abuse its discretion in granting judgment as a sanction – this Court's standard of review when the Board grants a motion for sanctions for violation of a Board order, including entry of judgment. *See Benedict,* 665 F.3d at 1268 ("The question is whether it was an abuse of discretion for the Board to enter default judgment.... Rule 2.132(b) gives the board discretionary powers to grant or deny motions for judgment thereunder.") (internal quotation omitted). The Board acts within its discretion in entering judgment as a sanction "'where no less drastic remedy would be effective, and there is a strong showing of willful evasion.'" *Id.* at 1269 (quoting *Baron Philippe de Rothschild*

31

*S.A.,* 55 U.S.P.Q.2d at 1854).  Judgment as a sanction necessarily eliminates a trial on any issues that a respondent wished to address, including statutory standing.

Before the Board, Respondent explicitly agreed that sanctions against it were appropriate, and it made no argument that entry of judgment was outside the Board's discretion or otherwise inappropriate; that any less drastic sanction, including the minor sanctions it proposed, would be effective in obtaining compliance with the July 2 Order; or that it had not engaged in willful evasion and noncompliance with the July 2 Order.  *See* June 12 Judgment at 5-8 (A5-8). Likewise, on appeal, although Respondent identified one of its two "Issues" as "Whether the TTAB erred when it cancelled Cigar King's trademark registrations without a full trial on the merits of the case," Appellant Br. at 2, Respondent has made *no* argument that the Board abused its discretion or otherwise erred in granting the sanction of judgment, and has not challenged any of the Board's findings supporting that judgment.

Respondent waived any challenge in this Court to the Board's entry of judgment by not arguing against it below.  *See* cases cited in Point I.A, *supra.* Likewise, this Court will treat as waived any issues that the appellant does not present through "developed argumentation" in its opening brief.  *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (citing and quoting cases); *Pentax Corp. v. Robison*, 135 F.3d 760, 762 (Fed. Cir. 1998) ("this

court will not address issues raised for the first time on appeal or issues not presented on appeal").

Even if not waived, the Board did not abuse its discretion in entering judgment against Respondent, based on its uncontested, and clearly correct, findings of a strong showing that Respondent had engaged in willful evasion of the July 2 Order, and, given Respondent's continuing refusal to comply many months after the deadline, that no less drastic sanction would have been effective. The Board "has the authority to assure diligent administration of the rights within its charge, by establishing and enforcing reasonable rules and procedures for disciplining non-compliance with its rules." *Benedict,* 665 F.3d at 1268; *see id.* at 1269 ("The law is clear that if a party fails to comply with an order of the Board …compelling discovery, the Board may order appropriate sanctions as defined in Trademark Rule 2.120(g)(1) and Fed.R.Civ.P. 37(b)(2*), including entry of judgment*.") (internal quotation omitted, emphasis added). 37 C.F.R. § 2.120(g)(1) provides, in pertinent part: "[I]f a party fails to comply with an order of the [Board] relating to disclosure or discovery … the Board may make any appropriate order, including those provided in [FRCP] 37(b)(2)…." One of the sanctions provided in Rule 37(b)(2) for violating a discovery order is "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). Further, the Board unambiguously warned Respondent that if it failed to comply with the

the July 2 Order, Petitioners' "remedy is to file a motion for sanctions under

Trademark Rule 2.120(g)(1)." July 2 Order at 21 n.18 (A53). As noted, the

properly entered June 12 Judgment, eliminated a trial on any issues, including

statutory standing.

## III. PETITIONERS HAD STANDING BEFORE THE BOARD

### A. Standing Before the Board Is Liberally Construed, Requiring Only a Real Interest in the Proceeding and a Reasonable Belief in Damage

Assuming Respondent has not waived its standing argument, Petitioners

clearly had standing before the Board. Section 14 of the Act confers standing upon

"any person who believes that he is or will be damaged … by the registration of a

mark…." 15 U.S.C. § 1064. In *Coach*, this Court reiterated the well-established

liberal administrative standing requirements for Board proceedings:

> an opposer must satisfy two judicially-created standing
> requirements…. : (1) a "real interest" in the proceeding; and (2) a
> "reasonable basis" for believing that it would suffer damage if the
> mark is registered. Under the "real interest" requirement, an opposer
> must have "a legitimate personal interest in the opposition." With
> respect to the second inquiry, the opposer's belief of damage "must
> have a reasonable basis in fact."

*Coach*, 668 F.3d at 1376 (internal citations omitted, quoting *Ritchie*, 170 F.3d at

1095, 1098) ("The purpose of the standing requirement is to prevent litigation

where there is no real controversy between the parties, where a plaintiff, petitioner

or opposer, is no more than an intermeddler.") (internal quotation omitted); *see*

*Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir.

34

1987) (challenger need "only … show a personal interest in the outcome of the case beyond that of the general public"); *Lipton Indus*., *Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 1029-30 (CCPA 1982) ("public interest is served … in broadly interpreting the class of persons Congress intended to be allowed to institute cancellation proceedings"); 3 J. T. McCarthy, *McCarthy on Trademarks and Unfair Competition* ("McCarthy") § 20:7 (4th ed. 2013) (noting "liberalized standing rules"; "opposer need only be something more than a gratuitous interloper or a vicarious avenger of someone else's rights"). This liberal "construction is especially justified when the public interest served by a trademark opposition proceeding is recognized," such as here, involving a challenge to deceptive marks. *Jewelers Vigilance,* 823 F.2d at 493 (internal quotation omitted).

"[P]leading and proof of damage or belief in damage are not necessary to establish standing." *Selva & Sons, Inc. v. Nina Footwear, Inc,.* 705 F.2d 1316, 1325 (Fed. Cir. 1983); *see Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.,* 424 F.3d 1229, 1232 (Fed. Cir. 2005) ("opposer need not show actual injury"); 3 MCCARTHY, § 20:10 ("standing does not require any proof of the likelihood of 'damage'"; "only purpose of a standing requirement is to weed out 'intermeddlers'"). Once standing is established, a plaintiff may "rely on any ground that negates [the] right to the registration[s]." *Coach,* 668 F.3d at 1377 (internal quotation omitted).

**B. Petitioners' Have Sufficiently Pled Standing**

Petitioners have clearly pled a sufficient "real interest," that is, "a personal interest in the outcome of the case beyond that of the general public," *Jewelers Vigilance*, 823 F.2d at 493, and a reasonable basis in fact for believing that they would suffer damage by the Registrations, and are not mere intermeddlers.

Habanos, S.A., pled that it owns the PTO registration for the mark HABANOS UNICOS DESDE 1492, translated as "unique Havana cigars since 1492," for cigars and related products (applied for on August 16, 1996); that Habanos, S.A. "uses this mark … throughout the world exclusively for cigars that are of 100% Cuban origin"; it is "engaged, *inter alia*, in the trade, marketing and advertising of Cuban cigars throughout the world… and the export of Cuban cigars throughout the world," except for the U.S. due to the embargo; and it "emphasizes that its cigars are made in Cuba from 100% Cuban-grown tobacco in its promotion, marketing and advertising, including in advertisements in the United States." Petition, ¶¶ 4, 6 (A60); *see* A154-56. Cubatabaco pled that it owns two PTO registrations for the mark LA CASA DEL HABANO, one for cigars and related products (applied for on September 22, 1994); and one for "retail store services featuring tobacco and smokers' accessories," and for social club, bar and restaurant services (applied for on August 16, 1996). *Id*. ¶ 7 (A60-61); *see* A157-62.

The registered marks HABANOS UNICOS DESDE 1492 (including in

translation as "Habanos Unique since 1492" and "Havanas Unique since 1492")
and LA CASA DEL HABANO regularly appear in advertisements in U.S. and
international publications promoting Petitioners' 100% Cuban origin cigars, *id*. ¶¶
5, 8 (A60-61),[7] demonstrating Petitioners' interest in entering the U.S. market
when permitted by law. *See Corporacion Habanos, S.A. v. Anncas, Inc.*, Opp. No.
91165519, at 13 (TTAB Nov. 29, 2006) (A226) ("to keep [Habanos, S.A.'s
HABANOS UNICOS DESDE 1492] mark in front of American consumers, [it]
uses its mark in advertising in U.S. publications," and has thereby "established that
it … intends to use the mark in the United States as soon as it is legally possible to
do so").

Cubatabaco also owns the certification mark application in the PTO for
HABANOS for "cigars," which certifies "that the cigars have their geographical
origin in Cuba and are made from Cuban grown tobacco, 'Cuba' meaning the
entire national territory of the Republic of Cuba." Petition ¶ 9 (A61). Since 1967,
Cubatabaco has owned the appellations of origin for HABANA (Spanish for
"Havana") for Cuban-origin tobacco and tobacco products, and for HABANOS for

---

[7] The embargo does not prohibit advertising and promotion. *See* 50 U.S.C. App. §
5(b)(4) (President denied "the authority to regulate or prohibit … the importation"
from Cuba, "whether commercial or otherwise … of any information or
informational materials"); 31 C.F.R. §§ 515.206(a)(1), 515.545 (implementing
legislation); A173-74 (1997 OFAC Ruling confirming paid advertisements
authorized).

cigars originating in the entire national territory of the Republic of Cuba, in

accordance with the 1958 Lisbon Agreement for the Protection of Appellations of

Origin and their International Registration. *Id.* ¶¶ 10-11 (A61). Under

Cubatabaco's authority, Habanos, S.A. uses the HABANOS appellation of origin

on all packages of its 100% Cuban origin cigars. *Id.* ¶ 11. Petitioners also pled

that the terms "Havana" and "Habanos" are used and understood throughout the

world, including in the United States, by cigar consumers and the cigar industry, to

denote 100% Cuban-origin cigars. *Id.* ¶¶ 23-30 (A64-65).[8]

Petitioners alleged that they believe that they will be and have been damaged

by the registrations of the HAVANA SOUL and HABANA LEON marks for non-

Cuban cigars by damaging: 1) the reputation that Havana cigars have in the United

States, including by deceiving consumers into believing that Cuban-origin cigars

are presently available for purchase in the United States; 2) Petitioners' current and

ongoing ability to promote their identified registered and applied-for marks, and

their appellations of origin in advertisements in the United States in connection

with 100% Cuban-origin cigars; 3) their ability to market 100% Cuban-origin

---

[8]  In addition to never explaining its relevance here, Respondent is wrong that "the
term habanos … has been registered (with disclaimer) many times in the United
States in connection with other terms for cigars." Appellant Br. at 14. In fact, a
search of the PTO's database for "live" registrations containing the term
"Habanos" in all classes reveals a total of three (3) registrations, all owned by
Habanos, S.A., and only one – HABANOS UNICOS DESDE 1492 – for "cigars."
A167; *see* A154-55, 163-66.

cigars to U.S. consumers as soon as U.S. law permits, including through use of their identified marks and appellations of origin; and 4) Cubatabaco's efforts to register its pending HABANOS certification mark. *Id.* ¶¶ 50-53 (A68).

Moreover, Petitioners have actively sought to prevent registration of the terms "Havana"/"Habana" for non-Cuban-origin cigars, bringing numerous successful Board proceedings against such applications and registrations, all of which have resulted in judgments, withdrawal or surrenders. *See* cases cited, Point III.D, *infra;* A120-23 (Respondent's listing of Board proceedings brought by Petitioners). Logic and common sense support the conclusion that Petitioners have not undertaken the expense and effort of preventing the registration of HAVANA/HABANA marks for non-Cuban cigars as "gratuitous interloper[s] or [] vicarious avenger[s] of someone else's rights." 3 MCCARTHY, § 20:7.

### C. Petitioners Do Not Need to Be Direct Competitors or Suffer Actual Economic Injury in the United States

Respondent's repeated argument that Petitioners lack standing because currently they cannot sell cigars in the United States, and thus do not suffer a direct competitive economic injury to their "bottom line" in the United States, in the form of lost sales in the U.S. directly resulting from Respondent's Registrations and products, is contrary to the case law, and Respondent fails to cite a single case in support of its novel theory. *See* Appellant Br. at 9, 11, 12, 14. Not surprisingly, many disputes before the Board do involve competing parties in the U.S., but no

case holds that is a *requirement* for standing, and there are many contrary cases.

The case law is clear that a plaintiff need not claim *economic* harm or *competitive* injury to plead standing under section 2(e)(3); indeed, it need not claim to be a direct or indirect competitor; engage, or even have any interest in engaging, in the sale of the types of goods at issue in the U.S. or elsewhere; claim ownership of the challenged mark; or use the term as a trademark. *See Commonwealth of Aruba v. Excelsior, Inc*., 5 U.S.P.Q.2d 1685, 1686 (TTAB 1987). In *Aruba*, the Board held that the Aruba government had standing to oppose registration of ARUBA for swimwear under section 2(e)(3), although the government did not sell swimwear, express any interest in doing so, assert any ownership of the mark, or claim any use of "Aruba" as a mark. Nevertheless, the Board found that Aruba was not a mere intermeddler, and that it had standing based on its claim that the term "Aruba" "should be kept free for use as an indication of a legitimate connection between Aruba and goods having a relationship thereto." *Id*.; *see Corporacion Habanos, S.A. v. Rodriguez,* 99 U.S.P.Q.2d 1873, 1875-76 (TTAB 2011) (involving same Cuban petitioners as here; under sections 2(a) or 2(e)(3), "petitioners do not need to own a pending application for the mark, do not have to be using the term as a mark, or even use the term at all, in order to establish their standing"; "no requirement for petitioner to establish a property interest as that is not an element required for standing under Sections 2(a) or 2(e)(3)"), *appeal*

*dismissed, Flores v. Corporacion Habanos, S.A.,* 2013 WL 6154120 (Fed. Cir. Nov. 21, 2013).

Petitioners have pled a far stronger case for standing than Aruba, which, unlike Petitioners, did not sell, market, certify, advertise, or register marks for the goods at issue, or claim any interest in the U.S. market.  Thus, Petitioners have standing based on their claim that the terms "Havana" and "Habana" "should be kept free for use as an indication of a legitimate connection between [Havana] and [cigars] having a relationship thereto."  *Aruba*, 5 U.S.P.Q.2d at 1686; *see also Consorzio del Prosciutto di Parma v. Parma Sausage Prod., Inc.,* 23 U.S.P.Q.2d 1894, 1897 (TTAB 1992) (organization had standing to assert geographic deceptiveness claim, based on its role as certifier of goods originating in geographic region and protector of certification marks); *Rodriguez,* 99 U.S.P.Q.2d at 1876 (although recognizing that Petitioners cannot sell goods in the U.S., citing in support of standing *Eastman Kodak Co. v. Bell & Howell Document Management Products Co.,* 23 US.P.Q.2d 1878, 1879 (TTAB 1992), *aff'd,* 994 F.2d 1569 (Fed. Cir. 1993), for proposition that "party challenging mark on descriptiveness grounds may establish standing by pleading and proving it is engaged in manufacture or sale of related products").

This Court and the Board have routinely held, in addition to geographic deceptiveness cases, that statutory standing does not require a direct economic

competitive injury through lost sales or business in the U.S. In *Ritchie*, involving a section 2(a) "immoral/scandalous" claim, this Court expressly rejected a "commercial interest" requirement to establish standing: "*In no case* has this court *ever held* that one must have a *specific commercial interest*, not shared by the general public, in order to have standing as an opposer." 170 F.3d at 1096-97; *Jewelers Vigilance*, 823 F.2d at 493 (holding trade association has standing to oppose deceptive mark, although not a competitor of applicant, and "without proprietary rights in a mark or without asserting that it has a right or has an interest in using the" challenged mark); *Tanners' Council of America, Inc. v. Gary Industries, Inc.,* 440 F.2d 1404, 1406-07 (CCPA 1971) (holding opposer trade association had standing to challenge mark as deceptive and deceptively misdescriptive, although it did not engage in any business involving the goods at issue or otherwise compete with applicant; and made no claim to mark); *Petroleos Mexicanos v. Intermix S.A.*, 97 U.S.P.Q.2d 1403, 1405-06 (TTAB 2010) (*PEMEX*) (standing found based on claim of false connection between respondent's PEMEX mark and Mexican oil company known as PEMEX under section 2(a); not based on allegation of competitive economic injury in U.S.); *Assoc. pour la Defense ... de Marc Chagall v. Bondarchuk*, 82 U.S.P.Q.2d 1838, 1841 (TTAB 2007) (standing found based on claim of false connection between artist and MARC CHAGALL registration for vodka; no allegation of interest in selling vodka in the

United States, or of competitive economic injury in the U.S.); *F.B.I. v. Societe: "M. Bril & Co.,"* 172 U.S.P.Q. 310, 313 (TTAB 1971) (rejecting claim that FBI lacks standing because it "is not legally engaged 'in commerce'…. in that it is not commercially engaged in the sale of goods or services"; "claim of damage can take various forms including… allegations" of false connection or likelihood of confusion under sections 2(a), 2(d)); *see also Stoller v. Ponce*, 113 Fed. Appx. 403, 405-06 (Fed. Cir. 2004) (likelihood of confusion; for standing, "type of interest demonstrated need not be monetary").

Respondent attempts to avoid this settled law by inventing a nonexistent distinction between individuals and corporations, with the latter purportedly needing to suffer some "bottom line" actual competitive economic injury in the form of lost sales in the U.S. Appellant Br. at 9-12. This is not the law. For example, in *PEMEX, supra,* the Mexican oil company PEMEX adequately alleged standing without any reference to business in the U.S., economic injury in the U.S., lost sales in the U.S. or competitive injury. *See* 97 U.S.P.Q.2d at 1405-06 (quoting standing allegations). Respondent's assertion that PEMEX had standing because "it alleged that it had substantial business activities in the United States," Appellant Br. at 19, is incorrect. That allegation was clearly related to the *merits* of its section 2(a) claim, *not* standing. *See* 97 U.S.P.Q.2d at 1406. Further, there is nothing in the *PEMEX* decision (or in any other case) that suggests that "the

foreign entities were not legally prohibited from selling their products in this [*sic*] United States and *therefore* were found to have standing."  Appellant Br. at 19 (emphasis added).  Likewise, Respondent's assertion that, just because the plaintiff in *Ritchie* submitted petitions in support of his standing to bring a section 2(a) "immoral/scandalous" claim, Petitioners lack standing to bring a section 2(e)(3) claim unless they submit petitions, affidavits or other evidence from "United States citizens" that its belief in damage is reasonable, *id*. at 14, is unsupported by any case law, and is frivolous.

### D. The Board Has Routinely Held Petitioners Have Standing on Similar Facts and Despite the Embargo

Consistent with these cases, and directly contrary to Respondent's unprecedented position that the embargo bars Petitioners' standing, the Board has repeatedly and uniformly held that Cuban parties have standing to challenge registrations, including in four prior decisions on behalf of one or both Petitioners involving geographic deceptiveness claims, on very similar facts as alleged here. In each of these cases, the Cuban parties were not direct competitors in the U.S. market, they did not claim direct economic injury to their "bottom line" in the U.S., and the Board recognized, indeed emphasized, that the Cuban parties had standing although the embargo prohibited them from selling their goods in the U.S.:  "So as to be perfectly clear, opposer has standing, although it does not and cannot engage in any business in the United States due to the embargo on Cuban

goods." *Corporacion Habanos, S.A. v. Anncas,* 88 U.S.P.Q.2d 1785, 1790 (TTAB 2008); *see Corporation Cimex, S.A. v. DM Enters. & Distribs., Inc.*, 2008 WL 5078739, at *3 (TTAB Nov. 17, 2008) (identical quote).

These decisions recognize that Petitioners have more than a reasonable belief that their registered marks, their advertising and promotion strategy for entering the U.S. market post-embargo, and the reputation of genuine Havana cigars will be damaged by the HAVANA SOUL and HABANA LEON Registrations for a non-Havana cigar, and that Petitioners, as the owners of the HABANOS UNICOS DESDE 1492 and LA CASA DEL HABANO marks, and the current exclusive exporter and certifier of genuine 100% Cuban-origin cigars, have a very real interest in preventing that damage.

In *Anncas*, involving almost identical standing facts, the Board held that Habanos, S.A. had "established its standing" to oppose registration of HAVANA CLUB for cigars based on geographic deceptiveness, in reliance on its pleaded HABANOS UNICOS DESDE 1492 registration; its use of that mark in advertising in U.S. publications; and its intent "to sell 100% Cuban-origin cigars in the United States as soon as United States laws allow." *Anncas*, 88 U.S.P.Q.2d at 1790.

In *Rodriguez, supra,* the Board held that Petitioners had sufficiently alleged standing on a similar, but even lesser, showing than here, as petitioners there did not rely on an interest in and harm to registered and applied-for marks in the U.S.:

Petitioners allege in the pleadings that they are, engaged, *inter alia*, in the trade, marketing, and advertising of Cuban cigars throughout the world, including in Cuba, and the export of Cuban cigars throughout the world (with the exception of the United States due to the United States trade embargo). Petitioners emphasize that their cigars are made in Cuba from 100% Cuban-origin [sic] tobacco in promotions, marketing and advertising, *including in advertisements in publications in the United States*. Petitioners also allege that PINAR DEL RÍO is an appellation of origin for Cuban cigars owned by Cubatabaco in Cuba, and that they will be damaged by the registration of the PINAR DEL RÍO designation upon the Supplemental Register for use on cigars of non-Cuban origin. *These allegations adequately allege petitioners' real interest and reasonable basis for belief in damage by virtue of United States consumer deception,* as promoters or manufacturers of cigars labeled with the same indication of geographic origin.

99 U.S.P.Q.2d at 1875-76 (emphasis added, internal citations omitted).

In *Corporacion Habanos, S.A. v. Xikar, Inc.*, 2012 WL 5902079 (TTAB Nov. 13, 2012), the Board held opposers had standing to oppose registration of HAVANA COLLECTION for non-Cuban cigar accessories under section 2(e)(3) on very similar facts: opposers had pled their registered HABANOS UNICOS DESDE 1492 and LA CASA DEL HABANO marks; they are in the business of marketing and exporting Cuban cigars and related products; and they plan and intend to enter the U.S. cigar market, given its size, wealth, and proximity to Cuba, when allowed by U.S. law. *Id*. at *2-3.

The Board and a federal district court have also found that the embargo did not prevent standing for Cuban parties based on blocked pending applications. *See Corporacion Habanos, S.A. v. Guantanamera Cigars Co.,* 86 U.S.P.Q.2d 1473,

1475 (TTAB 2008) (section 2(e)(3) claim; holding Habanos, S.A. had standing

despite fact it is "a Cuban entity subject to the U.S. embargo on Cuban goods"),

*remanded on other grounds*, 729 F.Supp.2d at 250-52 (affirming Board holding on

standing, although "Cuban embargo prohibits Habanos from exporting cigars into

the U.S."), *opp. sustained on remand*, 102 U.S.P.Q.2d 1085 (TTAB 2012); *Cimex,*

*S.A., supra,* at *3 (opposition based on Article 7 of the IAC; expressly rejecting

argument that embargo prevents standing; holding Cuban opposer had standing

although "'it does not and cannot engage in any business in the United States due

to the embargo on Cuban goods'") (quoting *Anncas*, 88 U.S.P.Q.2d at 1790).

### E. U.S. Foreign Policy Strongly Supports a Finding of Standing Here

Appellant's argument that Petitioners' have no standing because they cannot

sell cigars in the U.S., if accepted, would also seriously undermine U.S. foreign

policy of protecting reciprocal U.S.-Cuban trademark rights, including through

allowing cancellation and opposition proceedings to protect Cuban trademark

interests. The Cuban Assets Control Regulations' ("CACR") general license

contained in 31 C.F.R. § 515.527 authorizes Cuban parties to engage in

transactions related to the registration of trademarks in which a Cuban national has

an interest, and "the parallel provisions of § 515.528," *see* OFAC Director's

August 19, 1996 Ruling ("OFAC Ruling"), A172, authorize U.S. nationals to

engage in like transactions in Cuba. These authorizations "are intended to provide

reciprocal protection for the intellectual property of Cuba and the United States." *Id.* As authoritatively interpreted in the OFAC Ruling, § 515.527 also authorizes Cuban nationals to bring opposition and cancellation proceedings "where these actions relate to the protection of a trademark in which Cuba or a Cuban national [] has an interest," *id.*, as here concerning their registered HABANOS UNICOS DESDE 1492 and LA CASA DEL HABANO marks, and the applied-for HABANOS mark. *See, e.g., Anncas*, 88 U.S.P.Q.2d at 1790 (holding CACR § 515.527 and OFAC Ruling authorize Habanos, S.A. to oppose registration of HAVANA CLUB under section 2(e)(3), because opposition relates to protection of its interest in its registered HABANOS UNICOS DESDE 1492 mark).[9]

Thus, although United States foreign policy, as expressed in CACR § 515.527 and the OFAC Ruling, does not itself grant Cuban nationals standing, this

---

[9] Petitioners note that Respondent mistakenly states that Petitioners "obtained an OFAC specific license to bring this" proceeding. Appellant Br. 8. In fact, consistent with *Anncas, Guantanamera, and Xikar*, Petitioners brought this proceeding pursuant to the general license of CACR § 515.527 and the OFAC Ruling because it "relate[s] to the protection of [the above-identified] trademark[s] in which [they] ha[ve] an interest." A172. In *Rodriguez*, Petitioners obtained an OFAC specific license to petition to cancel the PINAR DEL RIO registration because Cubatabaco only owned the PINAR DEL RIO appellation of origin in Cuba. *Rodriguez*, 99 U.S.P.Q.2d at 1875-76. Thus, the Board's footnote comment, repeated by Appellant, Br. at 8, that "a cancellation petition on the grounds that a mark is geographically deceptively misdescriptive" is not authorized by general license CACR § 515.527, *id.* at 1874 n.3, is accurate only to the extent that, as in *Rodriguez* – but not in *Anncas, Guantanamera, or Xikar* (all successfully brought pursuant to section 2(e)(3)) – the proceeding does not "relate to the protection of a trademark in which … a Cuban national has an interest." A172.

foreign policy interest strongly weighs against Appellant's unprecedented and unsupported argument that Cuban nationals lack standing to oppose or to cancel applications and registrations because they cannot sell their goods in the U.S.

In its Statement of Jurisdiction, Respondent asserted that the CACR, "31 C.F.R. Part 515 et seq., authorizing Habanos' standing is unconstitutional." Appellant Br. at 1. Respondent, however, did not raise this issue below, and makes no argument on appeal as to why any part of the CACR is unconstitutional; indeed, it fails to identify the CACR provisions that it contends are unconstitutional. Thus, any claim that the CACR is unconstitutional is waived. *See* Point II.A, C, *supra* (addressing waiver of issues not raised below or argued on appeal).

In any event, the Executive's broad statutory and constitutional authority over foreign affairs and national security authorizes the CACR generally, including § 515.527 and the OFAC Ruling specifically. The CACR is promulgated pursuant to the authority granted the President by the Trading with the Enemy Act, 50 U.S.C. App. § 5(b), and thus is "'supported by the strongest of presumptions and the widest latitude of judicial interpretation, and the burden of persuasion would rest heavily upon any who might attack it.'" *Dames & Moore v. Regan*, 453 U.S. 654, 674 (1981) (quoting *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring); *see also Regan v. Wald*, 468 U.S. 222, 242 (1984) (upholding CACR's prohibitions on right travel to Cuba against due

49

process constitutional challenge; "Matters relating to the conduct of foreign

relations ... are so exclusively entrusted to the political branches of government as

to be largely immune from judicial inquiry or interference.") (internal quotations

omitted); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999) (OFAC's

interpretation of CACR entitled to exceptional deference, as it is interpreting its

own regulations and exercising Executive's broad statutory and constitutional

authority over foreign affairs and national security).

### F.  Respondent's Remaining Arguments Are Meritless

Respondent's claim that Petitioners have no standing because it is unknown

when they can sell their cigars in the U.S. market, and, therefore, its interest and

belief in damage are "illusory," Appellant Br. at 9-10, 19, is meritless for

numerous reasons.  First, and dispositively, Respondent ignores and does not

challenge any of Petitioners' other alleged interests, *see* Point III.B, D, *supra*, and

makes no claim that those interests are not real or that belief in damage is not

reasonable, including protecting and promoting the reputation of genuine Havana

cigars and of their registered marks, and preventing consumer deception in the U.S.

as to the availability of Cuban cigars, including through lawful advertising and

promotion in the U.S.

Second, Respondent does not dispute that Petitioners do, in fact, intend to

enter the U.S. market when allowed by law.  Third, Petitioners have standing *now*

to protect the reputation of their Cuban cigars and to prevent consumer deception precisely because the date the embargo will be lifted is unknown (it may or may not be soon). As long as U.S. foreign policy recognizes the rights of Cuban parties to register, advertise, and protect their marks, including through opposition and cancellation proceedings, *see* Point III.E, *supra*, A172-74, in contemplation of the lifiting of the embargo, the unknown end date is no barrier to standing. Fourth, a belief in damage need not be certain or even likely to be "reasonable." *See, e.g., Universal Oil Products Co. v. Rexall Drug & Chem. Co.,* 463 F.2d 1122, 1124 (CCPA 1972) (standing "liberally construed"; explaining in *Tanners' Council, supra,* trade association had "a real interest" and a reasonable belief in damage sufficient to support standing, despite its speculative and attenuated claim "that the income of the association was dependent upon the income of its members and that registration of the involved mark *could* weaken the sales position of its members thereby ultimately reducing its own income") (emphasis added).[10]

Respondent's attempt to analogize Petitioners' standing to a situation involving "illegal" goods such as marijuana is likewise baseless. First, of course,

---

[10] Appellant's lengthy quotation from a federal court action, *General Cigar Holdings, Inc. v. Altadis, S.A.,* 205 F.Supp.2d 1335, 1357 (S.D. Fla. 2002), Appellant Br. at 10 n.1, has no possible relevance to whether Petitioners had standing before the Board. That quotation addressed a completely unrelated issue – whether statements allegedly made by the defendant's sales representatives to customers as to who would own the PUNCH and PARTAGAS cigar trademarks in the U.S. after the Cuban embargo was lifted were actionable false statements of fact under 15 U.S.C. § 1125(a), or non-actionable statements of opinion.

*Respondent's* goods are *legal* under federal law, and marks for those legal goods can be registered in the PTO. Thus, the issue is *not* whether Petitioners can sell Cuban cigars in the U.S., it is whether, consistent with U.S. law, Respondent should be prohibited from owning registrations for geographically deceptive marks for those lawful goods, and whether the cigar companies from that geographic location are proper parties to raise that question. Second, although Cuban parties cannot sell cigars in the U.S., U.S. law authorizes them to register their cigar marks, advertise their goods and marks, and bring opposition and cancellation proceedings to protect their interests. That is a far cry from the illegal marijuana example, and nothing about the embargo gives U.S. cigar companies *carte blanche* to register geographically deceptive marks, such as HABANA LEON or HAVANA SOUL.

Finally, none of the cases listed by Respondent, Appellant Br. at 16-19, supports its unprecedented requirement of a "bottom line" economic competitive injury in the U.S. for standing. Most simply stand for the general proposition that a plaintiff must have a real interest in the proceeding (not in the "registration," as Respondent mistakenly asserts, Appellant Br. at 15), and a reasonable belief in damage, or that, unsurprisingly, direct competitors generally have standing. Many, in fact, repeat that no showing of actual damage or injury is required. Otherwise, most of these cases are not pertinent to the issues here. Others, however,

specifically refute Respondent's argument that economic competitive injury in the U.S. is a requirement for standing.  *See e.,g., Aruba*, *supra*; *PEMEX*, *supra*; *Stocker v. General Conference Corp. of Seventh-day Adventists*, 39 U.S.P.Q.2d 1385, 1386-87 & n.4 (TTAB 1996); *Order of Sons of Italy in America v. Profumi Fratelli Nostra AG*, 36 U.S.P.Q.2d 1221, 1222-23 (TTAB 1995); *Harjo v. Pro Football Inc.*, 30 U.S.P.Q.2d 1828, 1830 (TTAB 1994); *Estate of Biro v. Bic Corp.*, 18 U.S.P.Q.2d 1382, 1384 (TTAB 1991).

## CONCLUSION

For the reasons stated herein, the appeal should be dismissed as moot, and the Board's June 12, 2013 Judgment should not be vacated.  If the appeal is not dismissed as moot, the Judgment of the Board should be affirmed.

Dated:  January 29, 2014

Respectfully submitted,

By:  ___/David B. Goldstein/_____
    DAVID B. GOLDSTEIN
    RABINOWITZ, BOUDIN, STANDARD,
      KRINSKY & LIEBERMAN, P.C.
    45 Broadway, Suite 1700
    New York, New York 10006-3791
    (212) 254-1111
    dgoldstein@rbskl.com
    *Attorneys for Petitioners Corporacion Habanos,*
    *S.A. and Empresa Cubana del Tabaco*

# United States Court of Appeals
## for the Federal Circuit

### CERTIFICATE OF SERVICE
Cigar King v. Corporacion Habanos, S.A., et al.  No. 2013-1531

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C., Attorneys for Appellees to print this document.  I am an employee of Counsel Press.

On **January 29, 2014**, Counsel for Appellee has authorized me to electronically file the foregoing **Brief of Appellees** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Frank Herrera
H New Media Law
55 S.E. 2nd Avenue, Suite 408
Delray Beach, Florida  33444

*Attorneys for Appellant*

A courtesy copy will be sent upon courts approval.

Upon acceptance by the Court of the e-filed document, six paper copies will filed with the Court, via Federal Express, within the time provided in the Court's rules.

/s/ Robyn Cocho
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  x     The brief contains    12,800    words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

\_\_\_\_\_ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  x    The brief has been prepared in a proportionally spaced typeface using  MS Word 2002  in a 14 point times new roman font or

\_\_\_\_\_ The brief has been prepared in a monospaced typeface using MS Word 2002  in a \_\_\_ characters per inch_____ font.

By: \_\_\_/David B. Goldstein/\_\_\_\_\_

DAVID B. GOLDSTEIN